## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

**CURTIS J. NEELEY, JR., MFA**                                   **PLAINTIFF**

**V.**                    **CASE NO. 5:09-cv-05151**

**NAMEMEDIA, INC.;**
**NETWORK SOLUTIONS, INC.;**
**and GOOGLE, INC.**                                   **DEFENDANTS**

### BRIEF IN SUPPORT OF MOTION TO DISMISS

Network Solutions, LLC, of Herndon, Virginia ("NSLLC") was recently served

with certain pleadings filed in this case.  Those pleadings purported to assert claims

against Network Solutions, Inc ("NSI"), a different, separate and distinct entity from

NSLLC, and an entity over which NSLLC has no control[1].  While it appears Plaintiff is

complaining of conduct by NSI and not NSLLC, in an abundance of caution, NSLLC has

entered its appearance to file a Motion to Dismiss and submits this Brief in Support of its

Motion to Dismiss Plaintiff's two Complaints naming "Network Solutions" as a

defendant (Docs. ##14 & 53) (collectively "Complaints").  For purposes of this brief and

---

[1] NSL asserts that the proof (including public records) would show that Network Solutions, Inc. ("NSI"),
the party named in the Complaint and upon whom plaintiff apparently intended to effect service, was a
domain name registrar owned by VeriSign, Inc. and served as the registrar for the domain names referenced
in the Complaint at the time of the deletion and re-registration complained of in the Complaint.  The actual
business upon which service was attempted, Network Solutions, LLC ("NSLLC"), was originally formed in
October of 2003 as Registrar, LLC in anticipation of the purchase of Network Solutions, Inc.'s assets by
Pivotal Private Equity.  In November of 2003, Pivotal Private Equity purchased NSI's assets from VeriSign
and contributed those assets to NSL, and NSL began operating as a domain name registrar.  NSI, however,
continued to be owned by VeriSign and continued in existence (although its name was apparently changed
after the sale).  In the asset purchase, NSL did not assume the liabilities of NSI for NSI's activities prior to
the sale.  For public documents available through the Security and Exchange Commission ("SEC")
reflecting the sale described above, please see the following SEC Website:
http://www.sec.gov/Archives/edgar/data/1014473/000119312503091907/d8k.htm.

the underlying motion only, all references to the named Defendant NSI will be assumed to be references to NSLLC, which entity denies all material claims in the Complaints. NSLLC will hereinafter be referred to as "Network Solutions."

Rather than resolving the factually intensive issue of Network Solutions' corporate role at the Rule 12 stage, the Court is simply urged to recognize that Plaintiff has wholly failed to assert any cognizable claim, no matter who the real-party-in-interest. Moreover, this Court does <u>not</u> have jurisdiction to impose injunctive relief not directly related to this Plaintiff's rights.  To the extent the Court made certain dispositive rulings in its March 1, 2010 Order (Doc. #97) ("the March 1 Order"), several of those rulings apply equally to Network Solutions.

## I. Introduction

Plaintiff makes virtually no allegations against Network Solutions in his Complaints.  Peeling back the conclusory assertions of alleged emotional distress and conspiracy directly asserted only against NameMedia, Inc. ("NMI") in paragraph 1 of each version of the Complaints (Docs. ## 1, 8, 14 and 53), which were disposed of in the March 1 Order, allegations against Network Solutions first materialized in Plaintiff's Amended Complaint filed November 24, 2009.  There, Plaintiff claims that Network Solutions somehow violated his unspecified copyrights and trademark rights "by advertising the domain registration expiration dates" presumably of the two domain names previously registered to Plaintiff.  *See* Doc. #14 at ¶4.  He further claims that the other named defendants' subsequent actions regarding those expired registrations somehow caused him harm.

The March 1 Order resolved various issues involving the other separate defendants NMI and Google, Inc. ("Google") and, in several respects, applies equally to Network Solutions.   In particular: (1) Plaintiff's claims are barred by the statute of limitations; (2) his copyright infringement claims are barred by his failure to have registered a copyright; (3) Plaintiff may not obtain emotional or punitive damages on his Lanham Act or copyright claims; and (4) Plaintiff's claims under Title 5 must fail because Network Solutions is not a government agency.

Network Solutions respectfully asserts the following additional bases for dismissal of claims against it: (1) Plaintiff has no standing to obtain relief regarding Network Solutions' alleged business practices after Plaintiff was no longer involved with Network Solutions; (2) Plaintiff's Lanham Act claims have no factual or legal grounds; and (3) even if the Court concluded legitimate trademark claims were asserted, clear precedent dictates that Network Solutions, as a mere registrar of domain names, may not face liability for such claims.   The Court should therefore dismiss Plaintiff's Complaints in their entirety as to Network Solutions.

## II.  Background

### A.    <u>The Internet and Domain Names.</u>

The process by which the Internet, or "world wide web" operates, including the identity and registration of particular "domain names," may reasonably be a mystery to the ordinary person.   The Internet is an international "super-network" connecting millions of individual computer networks and computers.   *Lockheed Martin v. Network Solutions*, 985 F. Supp. 949, 952 (C.D. Cal. 1997), *affirmed* 194 F.3d 980 (9th Cir. 1999) (referred to herein as "*Lockheed I*").   In order for the Internet to function, each computer connected to

it must have a unique numeric address, known as an Internet Protocol or "IP" address such as "192.215.247.50." *Id.* Because IP numbers can be difficult to remember, the Domain Name System ("DNS") was created to allow a more easily remembered word or phrase (also called a "domain name") to be associated with a specific IP address. In other words, the DNS provides the ability for Internet users to utilize easily-remembered domain *names* (e.g. "janesbagels.com") rather than trying to remember the numerically-based IP addresses. Without such a system, quick and easy Internet navigation would be nearly impossible. Domain name registration services are therefore one of the most important tasks to facilitate Internet usage.

At relevant times, Network Solutions has provided domain name registration services. *See Lockheed I* at 953. For a more detailed analysis of the process, the Court is invited to review several cases containing a helpful background discussion of this process. *Lockheed Martin v. Network Solutions*, 985 F. Supp. 949, 951-53 (C.D. Cal. 1997); *see also, Lockheed Martin Corp. v. Network Solutions, Inc.,* 141 F. Supp 2d 648, 650-52 (N.D. Tex. 2001) (*Lockheed II*) and *Island Online, Inc. v. Network Solutions*, 119 F. Supp. 2d 289 (E.D.N.Y. 2000). While Network Solutions' precise involvement in this process evolved over the years, the basic concept of domain name identification and registration remains essentially the same. As a registrar, Network Solutions does not make an independent determination of an applicant's right, vis-à-vis other third parties, to register a particular domain name. *Lockheed II* at 651.

## B.    **Plaintiff's Allegations Against Network Solutions.**

Despite Plaintiff's *pro se* status, his pleadings must still conform to and be read in the context of the Federal Rules of Civil Procedure. *See* March 1 Order at 10, citing

4

*Smith v. U.S.*, 369 F.2d 49 (8th Cir. 1966).  Plaintiff must also have standing to obtain injunctive relief against a particular defendant.  Because Plaintiff has not separately numbered any counts or claims, determining exactly what cause of action is asserted against Network Solutions is challenging, to say the least.

In light of Fed. R. Civ. P. 8(a)(1)&(3), the Court should reasonably conclude that paragraphs 4 and 5 of the First and Second Amended Complaints contain the only *specific factual allegations* related to Network Solutions.  The prayer for relief indicates that the sole relief being sought against Network Solutions is "an Order that Network Solutions Inc. cease advertising registration expiration dates completely[.]"  *See* Doc. #53 at 12 (alterations supplied).

The Second Amended Complaint contains several other broad-stroke allegations against the *plural* "Defendants."  One vestige of the initial Complaint, which only included NameMedia, Inc as a party, is the assertion that "Defendants created emotional distress to Plaintiff . . . ."  Docs. ## 1 & 53 at ¶1.  Plaintiff does not specifically claim Network Solutions did the same.  For the reasons stated in the March 1 Order, that claim has no merit, even if it were asserted against Network Solutions.

Among other ambiguous and conclusory allegations are included the following:

- "The Defendants conspired to cybersquat Plaintiff's domains without concern or even a rudimentary search for existing trademark rights."  Doc. # 53 at. ¶3.

- "Defendant Network Solutions recently alleged this fraudulent act [advertising the expiration of Plaintiff's domain names] was required by ICANN, Inc. of all registrars."  *Id*. ¶4.

- "The Defendant NameMedia, Inc. registered trademarked domains advertised by Defendant Network Solutions in order to prevent Plaintiff from reflecting the mark in a corresponding domain name and the

Defendants have each conspired to engage in a pattern of such conduct as will be shown in evidence." *Id*. ¶8.

- After alleging NMI communicated to Plaintiff that it "acquired" eartheye.com, Plaintiff again asserts without explanation that "Network Solutions advertised this registry expiration in violation of Plaintiff's copyrights and trademarks." *Id*. ¶18.

- "Because the Defendants actions are quasi-criminal and were intentional, Plaintiff prays that Defendants be required to pay punitive damages that will be significant." *Id*. ¶23.

- "The Defendants Google continue to license sleepspot after this action commenced and Network Solutions claimed detrimental reliance on ICANN Inc." *Id*.

The remainder of the allegations in the Complaints ostensibly relate solely to the remaining Defendants, NMI and Google. Viewing the facts in a light most favorable to Plaintiff, his assertions against Network Solutions boil down to the following:

- Network Solutions allegedly acted prior to November 2003 as the domain name ***registrar*** providing domain name registration services for two domain names – eartheye.com and sleepspot.com;

- Plaintiff was the ***registrant*** of those domain names;

- those registrations expired prior to November of 2003;

- Network Solutions advertised the expiration of such domain names;[2]

- NMI then registered and/or facilitated the registration of such domain names to third parties and engaged in subsequent conduct which was wholly unrelated to Network Solutions. Doc. #8 at 3.

-  NMI and Google entered into certain dealings which allegedly are actionable, but which in no way related to Network Solutions.

---

[2] Plaintiff does not state what is meant by "advertised" or what specific acts Network Solutions allegedly engaged in this regard. All registrars are required, as a part of their accreditation through ICANN, to make publicly available certain information about the domain names for which they serve as registrar, including the expiration date of each domain name registration. See Section 3.3.1.5 of ICANN's Registrar Accreditation Agreement, which is publicly available at http://www.icann.org/en/registrars/ra-agreement-21may09-en.htm. Network Solutions assumes Plaintiff is referring to this as "advertising". However, even if Plaintiff is referring to some other activity Plaintiff believes constitutes "advertising", the law discussed herein requires the same conclusion – dismissal of Plaintiff's claims.

### III.  Legal Standard

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) "is proper when Plaintiff's complaint fails to state a claim upon which relief can be granted."  *Northstar Indus., Inc. v. Merrill Lynch & Co.,* 576 F.3d 827, 831-32 (8th Cir. 2009).  Rule 8(a) requires that a complaint include a "short and plain statement of the claims showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  While the Court must accept as true Plaintiff's factual allegations, it is not bound to accept any legal conclusions couched as factual allegations.  *Papasan v. Allain,* 478 U.S. 265, 286 (1986).  The "Court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusion in the form of factual allegations."  *Wiles v. Capitol Indem. Corp.,* 280 F.3d 868, 870 (8th Cir. 2002).  In short, although the standard may be liberal, it requires more than "the bare assertion of legal conclusions."  *Lillard v. Shelby County Brd. Of Educ.,* 76 F.3d 716, 726 (6th Cir. 1996).

### IV.  Argument

**A.**     **Plaintiff Lacks Standing to Obtain Any Injunctive Relief Related to Domain Names Other Than Those Previously Registered by Plaintiff.**

As a threshold Article III matter, in order for this Court to have jurisdiction over the case, Plaintiff must have standing to bring it.  He must show that he has suffered an actual injury; that his injury is "fairly traceable" to the challenged actions of the Defendant; and that it is likely, as opposed to merely speculative, his injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  This Court has observed that standing is "the *sine qua non* of the power of the

Court to adjudicate[.]" *Glover v. United States*, U.S.D.C. W.D. Ark, Case No. 08-5207 (March 19, 2009).

"Standing is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id*. (quoting *Davis v. Federal Election Comm'n*, 128 S. Ct. 2759, 2768-69 (2008)). When seeking injunctive relief, the "injury in fact" element of standing requires the showing that the plaintiff faces "a real threat of ongoing or imminent harm." *Nenninger v. U.S. Forrest Service*, U.S.D.C. W.D. Ark., Case No. 07-3028 (July 3, 2008)(citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-105 (1983)).

1.   *Prior Actions are Moot*

The Complaints identify Network Solutions' purported actions surrounding the expiration of the registration of two domain names back in mid-year 2003. Thereafter, NMI and/or other third parties allegedly registered those domain names on July 2, 2003. Doc. #8 at 3; Doc. #53 at 8. Network Solutions has had no alleged involvement thereafter. To the extent Plaintiff were allowed to press his claims related to Network Solutions' actions in 2003 (which Network Solutions does not concede he should be), such claims and relief may only relate to those two specific domain names. To seek injunctive relief relating to Network Solutions' purported "advertising" of the expiration dates for those two registrations back in 2003 is clearly moot since the domain names are now registered to third parties, and there is nothing injunctive this Court could order Network Solutions to do to change that.

2.      *Plaintiff has no Standing to Obtain Relief Regarding Other Expirations*

Plaintiff has no standing to attempt to obtain broad injunctive relief directed at Network Solutions' current business practices related to *other* expiring registrations that have no relationship whatsoever to Plaintiff.  The facts and circumstances regarding registrar services provided to millions of customers, as well as the specific corporate policies at issue, would implicate the rights of parties not involved in this action.  Further, Plaintiff can assert no personal injury which is fairly traceable to any such actions.  The Court should therefore rule at the outset that it does not have jurisdiction to order that Network Solutions "cease advertising registration expiration dates completely" as requested in Plaintiff's prayer for relief.  Plaintiff simply does not have standing to assert such claims, which would involve millions of customers and domain names under management[3].

**B.      Statute of Limitations has Expired on Plaintiff's Claims.**

Once the Court dispenses with the standing argument, above, the only claim of Plaintiff which should conceivably remain would be damage claims related to the 2003 expiration of the domain name registration services for eartheye.com and sleepspot.com.  For the same reason stated in the March 1 Order, the statute of limitations precludes Plaintiff's claims related to Network Solutions during that time frame.  To the extent Plaintiff seeks to assert state law claims for the tort of outrage or any other claims governed by a statute of limitations, such claims are barred.  *See McQuay v. Guntharp*,

---

[3] In addition, prohibiting Network Solutions from publicly displaying the expiration dates for domain names would cause Network Solutions to be in breach of its Registrar Accreditation Agreement with ICANN.

336 Ark. 534, 537, 986 S.W.2d 850 (1999) (3 year statute of limitations for tort of outrage); 17 U.S.C. § 507(c) (3 year statute of limitation for copyright).[4]

As set forth in the March 1 Order, it is quite likely Plaintiff never suffered from any disability sufficient to toll the statute of limitations. The statute of limitations would not be tolled unless Plaintiff proved and established that he was insane.  *See* Ark. Code Ann. § 16-56-116(a).  *Id.*  Plaintiff's own Complaints indicate that any judicially imposed disabilities were removed in January of 2006.  *See* Addendum to Complaint, Doc. #8 at 5. For the same reasons set forth in the March 1 Order, Plaintiff's Complaints as to Network Solutions should be dismissed as a matter of law on all claims with a three year statute of limitations.

**C.**     **Plaintiff's Copyright Claims are Barred by His Failure to Obtain Copyright Registrations.**

The March 1 Order is the law of this case and dictates that any copyright claims should be dismissed against Network Solutions as well.  On March 2, 2010, the United States Supreme Court affirmed that 17 U.S.C. § 411(a) "requires copyright holders to register their work before suing for copyright infringement."  *Reed Elsevier, Inc. v. Muchnick*, 559 U.S.___(slip op., March 2, 2010).  While Plaintiff expresses certain moral objections to the status of copyright law in America, it is undisputed that the Constitution grants Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors . . . the exclusive Right" to their literary or artistic works.  *Id.* citing U.S. Const. Art. I, § 8, cl. 8.  And § 411(a) requires one suing for infringement to have registered his or her copyright prior to coming to federal court.

---

[4] While there is no specific statute of limitations for trademark infringement under the Lanham Act, Courts look to the most analogous state law statute of limitations. In this case, Plaintiff has alleged intentional infliction of emotional distress, which limitations period is three years, as argued by NMI.

Based on the face of Plaintiff's Complaint and other filings in this case, Plaintiff had no registered copyrights at the time his domain name registrations expired.   That presents a fatal bar to filing a claim under the Copyright Act.   *See Action Tapes, Inc. v. Mattson,* 462 F.3d 1010, 1013 (8th Cir. 2006).   Plaintiff can cite no precedent upon which this Court could disregard this clear precedent.   Because of the three year statute of limitations for copyrights, see above, the dismissal of Plaintiff's copyright claims against Network Solutions should be with prejudice.   *See* 17 U.S.C. § 507(c).

Moreover, Plaintiff's alleged copyright claims appear clearly to involve the display of his photographic works.   In relevant part, the Copyright Act provides protection for original works of authorship including literary works, dramatic works, pictorial, graphic and sculptural works 17 U.S.C. § 102(a).   Plaintiff may not contend the domain names were susceptible to copyright protection as there is not even a minimal showing of artistic or literary creativity in the domain names at issue, and there is no precedent for interpreting the federal copyright law to grant rights in a domain name character string that is used as part of the DNS.   Network Solutions' only conduct alleged in the Complaint related to the registration and deletion of those domain names. Accordingly, there is nothing that can be done at this stage such that the domain names at issue could be the subject of any copyright protection or enforcement against Network Solutions.   This provides additional grounds for dismissing Plaintiff's copyright claims with prejudice.

**D.    Plaintiff's Trademark Claims Fail to Assert Facts Upon Which Relief May Be Granted.**

    *1.   Plaintiff has Failed to State a Claim For Violating Anticybersquatting Consumer Protection Act*

As stated by the other defendants, "it is difficult to discern what facts  . . . Mr. Neeley alleges in support of that claim."  However, as discussed below, to the extent vague references to "cybersquatting" are made, Plaintiff has not stated a *prima facie* violation of the Anticybersquatting Consumer Protection Act 15 U.S.C. § 1125(d)(1)(A) (the "ACPA").   Additionally, even if Plaintiff were able to recite facts appearing sufficient to state a *prima facie* case of cybersquatting, the courts have recognized that a **domain name registrar's** actions in functioning as a domain name registrar **do not give rise to liability under the ACPA**.

The ACPA was enacted to "target persons who commandeer a domain name for no reason other than to profit by extortion . . . [.]"  *Ford Motor Co. v. Greatdomains.com, Inc.,* 177 F.Supp.2d 635, 642 (E.D. Mich. 2001).   The ACPA provides, in relevant part, as follows:

> A person shall be liable in a civil action by the owner of a mark … if, without regard to the goods or services of the parties, that person
>
> (i)  has a bad faith intent to profit from that mark ...; and
>
> (ii) registers, traffics in, or uses a domain name that –
>
> (I)  in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark[.]

*Id.*, quoting 15 U.S.C. § 1125(d)(1)(A)

As noted by the court in *GreatDomains*,

[t]o survive a Rule 12(b)6 motion for failure to state a claim under the ACPA, a plaintiff must allege facts in support of the following three elements:

(1) that the defendant has registered, trafficked in, or used a domain name;

(2) that the domain name is identical or confusingly similar to, or dilutive of, a distinctive or famous trademark; and

(3) that the defendant has a bad faith intent to profit from the mark.

*Id.*

In this case, Plaintiff has not alleged (because he cannot allege) that Network Solutions (i) registered, (ii) trafficked in or (iii) used the two domain names referenced in the Complaints.  Courts have considered the meaning of these three phases and concluded that none describes the actions of a domain name registrar.  "The word 'registers,' when considered in context, obviously refers to a person who presents a domain name for registration, <u>not to the registrar</u>." *Lockheed II* at 654 (emphasis supplied).  Plaintiff himself contends that Network Solutions was the registrar for the domains in question and that *Plaintiff* was the initial registrant (the one who "registered" the domain names in question), with NMI then registering the domain names after they were deleted.  Therefore, any claim for cybersquatting cannot be based upon this first-described action under the ACPA.

The phrase "traffics in" is defined in the ACPA as "referring to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges or

currency, and any other transfer for consideration or receipt in exchange for consideration." 15 U.S.C. § 1125(d)(1)(E).  Recognizing that these terms are subject to broad interpretation and are simply illustrative, the *GreatDomains* court concluded that "'traffics in' contemplates a direct transfer or receipt of ownership interest in a domain name to or from the defendant."  *GreatDomains* at 645.  Not only is such a transfer of ownership not alleged by Plaintiff, it cannot be, as Network Solutions' role as a registrar is simply to facilitate the registration of a domain name character string selected (or "presented") by the registrant.  Therefore, any claim for cybersquatting cannot be based upon this second-described action under the ACPA.

As for the phrase "uses" in the ACPA, section "1125(d) expressly provides that a person may not be held liable for 'using' a domain name under the statute unless that person 'is the domain name registrant or that registrant's licensee.'"  *Id.* at 644, citing 15 U.S.C. § 1125(d)(1)(D).  Plaintiff has not alleged (because he cannot allege) that Network Solutions was the domain name registrant or the registrant's licensee for the domain names in question.  Therefore, any claim for cybersquatting cannot be based upon this third and final described action under the ACPA.

Although Plaintiff's failure and inability to allege any actions by Network Solutions that would come within the actions required to state a claim under the ACPA is fatal to his claim of cybersquatting, Plaintiff also has not alleged (because he cannot allege) that any of the aforementioned actions were done with a bad faith intent to profit from Plaintiff's trademark, as required by the ACPA.  The ACPA contains a non-exclusive list of factors a court may consider in determining whether or not actions were taken in bad faith, none of which is alleged here.  *See GreatDomains* at 642, citing 15 §

14

1125(d)(1)(B)(i).  Additionally, the *Lockheed II* court recognized that although the list of "bad faith" factors in the ACPA is not exclusive, "none of the conditions and conduct listed would be applicable to a person functioning solely as a <u>registrar</u> or registry of domain names." *Lockheed II* at 655, *GreatDomains* at 645 (emphasis added). Consequently, for the reasons stated above, Plaintiff's claim for cybersquatting against Network Solutions should be dismissed as a matter of law.

### 2.   *Plaintiff Has Not Asserted a Claim for Contributory Infringement*

This Court offered certain *dicta* in its March 1 Order at pages 13-14 regarding potential "upstream liability" for contributory infringement against NMI.[5]   Network Solutions respectfully observes, however, that Plaintiff has not alleged any facts or alleged degree of control or monitoring by Network Solutions which would expose it to liability based upon the *Lockheed I* precedent cited above.

"Contributory infringement occurs when the Defendant either intentionally induces a third party to infringe the plaintiff's mark or supplies a product to a third party with actual or constructive knowledge that the product is being used to infringe the service mark." *Lockheed I,* 194 F.3d at 983, citing *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853-54 (1982).  Network Solutions' domain name registration services have been ruled to be "***a service***."  *Size, Inc. v. Network Solutions, Inc.*, 255 F.Supp.2d 568 (E.D. Va. 2003), citing *Lockheed I*, 194 F.3d 180.  The *Size* court observed that Network Solutions' role is more equivalent to the passive messenger service provided by

---

[5]   Georgia-*Pacific Consumer Prod. LP v. Myers Supply, Inc*. 2009 WL 2192721 (W.D. Ark 2009) involved "products," as do many traditional trademark infringement actions.  Network Solutions provides a service, which as set forth herein, requires direct control and monitoring over the alleged infringer's actions.

the U.S. Postal Service, rather than the interactive role of one in the product supply chain. *Size* at 573; *see also Lockheed I,* 194 F.3d at 985-86.

After observing that Network Solutions' services are not a product but are, in fact, a service, the *Lockheed I* appeals court noted that when a court in considering a fact pattern in the contributory infringement context without the convenient "product" mold, the court must "consider the extent of control exercised by the defendant over the third party's means of infringement." *Id.* The *Lockheed I* appellate court then concluded that Network Solutions' service "does not entail the kind of **direct control** and **monitoring** required to justify an extension of the 'supplies a product' requirement." *Id* at 985.

The cases limiting the liability of parties like Network Solutions are founded upon many factors, including the large volume of requests that are processed and the legal and practical impossibility of forcing a registrar to determine whether every person wishing to register a domain name could conceivably violate a third party's rights. *See Lockheed II* at 655 ("Defendant simply could not function as a registrar . . . if it had to become entangled in and bear the expenses of disputes regarding the right of a registrant to use a particular domain name"); see also, *Zeran v. America Online, Inc.*, 129 F. 3d 327, 333 (4th Cir. 1997).

By way of practical example, several national businesses utilize the trade name "United" -- United Airlines, United Healthcare, United Van Lines, United Artists Theaters and United Way, to name a few. If a registrar were to provide services related to united.com and face potential liability from any of the potential claimants of the mark "United," the process of domain registration would, for all practical purposes, grind to a halt. It certainly would become cost prohibitive to all involved. Citing *Lockheed I*, the

*Size* court held that domain name registrars simply lack the requisite degree of control over the activity of third-party infringers to justify extending the meaning of "product" to their activities.  *Size, Inc.* at 572 citing *Lockheed I,* 194 F.3d at 984-85.

Plaintiff does not make any allegation that Network Solutions' role was any different than present in the *Size* case, where the court found that Network Solutions' role was that of a "neutral stakeholder with no direct involvement in the activities of the allegedly infringing third party."  *Id.* at 573.  Here, Plaintiff merely alleges that he had registered a domain name through Network Solutions and at some point prior to the expiration of that domain name, Network Solutions published the fact of such expiration. From that point forward, all relevant conduct was allegedly taken by NMI and/or third parties.  He has not alleged the requisite degree of "control" or "monitoring" over such third party's alleged "means of infringement."   Accordingly, the Court should rule that Plaintiff has failed to state a claim for contributory infringement as a matter of law.

> 3.   *Plaintiff Asserts No Cognizable Claim for Conspiracy.*

The Court observed that Plaintiff claims "all defendants conspired to cybersquat the two domain names and ignored his alleged trademark rights, and that NameMedia registered and licensed the domain to Google."  March 1 Order at 13.  However, Plaintiff has not specifically pled any direct cause of action against Network Solutions in relation to such.   The bald and conclusory allegation of a generic conspiracy should not be sufficient to drag Network Solutions through costly litigation.

A claim for civil conspiracy is a derivative tort that is not actionable in and of itself, although "recovery may be had for damages caused by acts committed pursuant to the conspiracy."  *Dodson v. Allstate Ins. Co.,* 345 Ark 430, 445, 47 S.W.3d 866, 876

(2001) citing *Mason v. Funderburk*, Ark. 521, 446 S.W. 2d 543(1967).  The Arkansas Supreme Court has defined civil conspiracy as a tort that requires the plaintiff to show that two or more persons combined to "accomplish a purpose that is unlawful or oppressive . . . . "  *Id.*

To proceed on a claim for civil conspiracy, Plaintiff would have to allege and prove:

(1) That two or more persons agreed to accomplish a purpose;

(2) With the specific intent to accomplish an underlying tort;

(3) That one or more of the co-conspirators committed one or more overt acts in furtherance of the alleged conspiracy; and

(4) That the conspiracy proximately caused damages to the plaintiff.

*See* Ark Model Jury Instruction 714.

The actual agreement may be shown by direct evidence or inferred "if it be shown the two actors pursued the same unlawful object."  *Funderburk*, 247 Ark. At 529, 446 S.W. 2d at 548.  As established above, Plaintiff's allegations against Network Solution are evanescent, at best.  Plaintiff certainly has not alleged facts meeting all of the above-cited elements.  Unavoidable precedent demonstrates that Network Solutions could not have committed copyright infringement, trademark infringement or cybersquatting.  The court has also made certain rulings that Plaintiff has failed to state direct claims against Google and NMI.  So it would be entirely circular to allege that Network Solution has contingent liability for claims which, in and of themselves, have no merit.

The Complaints simply contain no allegations from which this Court could conclude that *Network Solutions* had any specific agreement with any third parties to

commit any unlawful objective – especially third party conduct which, in itself, would have to be proven actionable. Further, there is no allegation from which this Court could conclude that Network Solutions committed any unlawful act or had any knowledge that any third party's conduct was unlawful or oppressive. In short, beyond pure speculation, there is no way Plaintiff's claims should be indulged. He simply has failed to assert any facts upon which relief could be granted.

For these reasons, Plaintiff has failed to state any claim for trademark infringement against Network Solutions, either directly or derivatively by way of a conspiracy allegation. Clearly, such arguments apply with more force in light of the lack of nexus between this party and the alleged actions of Google and NMI.[6] Accordingly, pursuant to Fed. R. Civ. P. 12(b)(6), such claims should be dismissed as a matter of law.

4. *Plaintiff Can Assert No Claim for Punitive Damages.*

As concluded in the March 1 Order, Plaintiff cannot seek punitive damages under the Lanham Act or Copyright Act. For the reasons stated by NMI and the Court, should any claim survive this Motion, the Court should further rule that Plaintiff has asserted no facts justifying an award of punitive damages.

### V. Conclusion

For the reasons set forth above, Plaintiff's claims against separate defendant Network Solutions, Inc. and/or Network Solutions, LLC should be dismissed in their entirety. Based upon the procedural posture of this case and Plaintiff's repeated attempts to change directions, Network Solutions respectfully asserts that the dismissal should be

---

[6]  By making such a statement, Network Solutions makes no concession or commentary as to the merits of Plaintiffs claims against the other defendants.

with prejudice on the basis that Plaintiff cannot assert any viable claims against Network Solutions.

Respectfully submitted,

NETWORK SOLUTIONS, LLC,


By:     /s/ John M. Scott
      Robert L. Jones, III, AR Bar #69041
      John M. Scott, AR Bar #97202
      Kerri E. Kobbeman, AR Bar #2008149
      CONNER & WINTERS, LLP
      211 E. Dickson Street
      Fayetteville, AR  72701
      Telephone (479) 582-5711
      Facsimile (479) 587-1426

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

H. William Allen
Brooks C. White
Allen Law Firm
212 Center Street, 9th Floor
Little Rock, AR  72201

Michael H. Page
Durie Tangri, LLP
217 Leidesdorff St.
San Francisco, CA  94111

Jennifer H. Doan
Joshua R. Thane
Haltom & Doan
Crown Executive Center, Suite 100
6500 Summerhill Rd.
Texarkana, TX  75503

I hereby certify that I have mailed the document by the United States Postal Service to the following non CM/ECF participants:

Curtis J. Neeley, Jr.
2619 N. Quality Lane, Apt. 123
Fayetteville, AR  72703

/s/ John M. Scott
John M. Scott