# IN THE UNITED STATES COURT FOR THE WESTERN DISTRICT OF ARKANSAS

U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

NOV 02 2010

CHRIS R. JOHNSON, Clerk
By
Deputy Clerk

**Curtis J Neeley Jr., MFA**

v.

**CASE NO. 5:09CV05151**

**NameMedia Inc.**
**Google Inc.**

## BRIEF SUPPORTING MOTION FOR JOINING OF CLAIMS AND JOINDER OF THE FCC AS A NAMED PARTY

Comes now Plaintiff, respectfully to the United States Court for the Western District of Arkansas and requests being permitted to join several claims and one party in the same series of occurrences as is described in Federal Rules of CP Rules 18(a) and Rule 20(a)(2)(a).

The attached supplemental complaint desires to join claims and parties to the prior litigation. This Brief will describe all claims sought joined and is in keeping with the Court orders rejecting the prior Motions to Amend. Plaintiff seeks only to join claims in this action that have transpired since the initial filing and are supported by US Rules of CP Rule 18(a) and one party as permitted due supported by US Rules of CP Rule 20(a)(2)(a).

## Claims and Party to Join

Claims added follow Defendants named to better organize this complicated and unique action. The initial claims recognized as recently as October 27, 2010 by this Court are repeated herein but the Plaintiff is not sure which claims were actually allowed. Only the Federal Communications Commission is sought joined as described for one claim.

# NameMedia Inc.

## I. Initial Title 17 violations and defamations by NameMedia Inc.

1. NameMedia Inc initiated the realization of the need for this litigation. NameMedia Inc initially attributed nude images truthfully to the Plaintiff to persons who logged in to the <photo.net> website and asserted being an adult and foregoing anonymity. This was and is an acceptable requirement for the Plaintiff that assured the original figurenude art would not be displayed to anonymous viewers. At some indeterminate date in 2007, NameMedia Inc purchased <photo.net> and altered the business policies and "terms of use" to assert permanent licensure of all uploaded art to the domain. At this time NameMedia Inc also began to allow anonymous access to all content already uploaded regardless of the desires of the original artist.

2. NameMedia Inc used <photo.net> and conspired with Google Inc and began attributing Plaintiff to nudes truthfully but then no longer allowed the Plaintiff to remove the original figurenude images. On December 26, 2008 the continued truthful attribution of original figurenudes created by the Plaintiff became an extreme source of distress because Google Inc and <photo.net> had begun causing six original nude images to be correctly attributed to the Plaintiff during image searches at <photo.net> and at <google.com> to the Plaintiff's minor child.

3. These disparaging results were displayed while alleging specifically that the Plaintiff caused this intentionally as was untrue and prohibited by Arkansas laws regarding libel and defamation and US Title 18 § 1343. Plaintiff attempted to cause the figurenude photographs to be deleted after his minor child expressed outrage because a parent's name caused nudes to be returned in search engines causing the minor child distress at school as is seen redacted in the record.

See Docket 53 Ex. Child <curtisneeley.com/NameMedia/docketPDFs/CHILD.pdf >

**DMCA Liability Limitations Carefully Removed**

4. In 2008 the Plaintiff had recovered enough intellect to survive on his own with minimal assistance. The Plaintiff continued to establish and publish original figurenude art in 2008 while attempting to exclusively control attribution.

5. The Plaintiff first politely requested and then demanded that Hannah Thiem, the Digital Millennium Copyrite Agent (DMCA) for NameMedia Inc, delete the Plaintiff's figurenude art in early 2009 soon after the distressing communication from the Plaintiff's minor child. Ms Thiem was notified using IP tracking beacons as well as via several community websites. Notifications via <flickr.com> and <myspace.com> are in the record. These DMCA notifications were carefully monitored and NameMedia Inc continued to violate the moral rights of the Plaintiff not adequately secured for American citizens but recognized for visiting Berne Country Citizens because of the Berne Compact Implementation Act of 1988.

*See* <curtisneeley.com/NameMedia/Mandamus/Exhibits/Berne.pdf >

6. NameMedia Inc counsel claimed these monitored notifications violated Ms Thiem's privacy but NameMedia Inc continued to display the figurenude art of the Plaintiff maliciously during this very litigation until after January 24, 2010. This tort was alleged initially and is perhaps noted in Docket 192 by Honorable Jimm Larry Hendren.

**II. First US Title 1125(d) tort by NameMedia Inc.**

7. Plaintiff had begun to attempt to exclusively morally control publication of his original figurenude art and this attempt caused research into past creations of the nude form. Plaintiff discovered a truthful historical record of nude art being attributed to the Plaintiff at <web.archive.org/web/20020815143411/www.eartheye.com/nudes.html>. These nude photos are the early work of an obvious master photographer developing an absolute use of the nude human forms as figures displayed exclusively as art OBJECTS and not as people.

8. While researching the historical use of <eartheye.com> for art, the domain was offered to the Plaintiff contrary to US Title 15 § 1125(d) repeatedly but was then sold to EDATS Inc in FL allegedly for $2,300, as seen in the record. The Plaintiff had advised NameMedia Inc that the domain had once been used for commerce and was rightly owned by Curtis J Neeley Jr. from 1996 until 2003. The Plaintiff was then practically dared to pursue NameMedia Inc before domain name resolution panelists.

**<u>III. Second US Title 1125(d) tort by NameMedia Inc.</u>**

9. Plaintiff researched his prior use of the Internet and discovered that <sleepspot.com> was archived at the Internet Archive just as <eartheye.com> is now. Since NameMedia still owns and licenses <sleepspot.com>. they were and are able to use the robots exclusion protocol "REP" to cause the historical archives of this artwork to be hidden. Before the archive files were hidden, the Plaintiff was able to refresh his traumatically injured mind's recollections and realizes that <sleepspot.com> was once an extreme use of the Internet to sell hospitality reservations. <sleepspot.com> involved more productive, reliable, and scalable uses of the Internet to sell reservations of "Spots to Sleep" than exists anywhere else to this date.

10. The distress and anger caused by the original figurenude photographs being shown against the Plaintiff's desires caused the user profile to be banned due to angry posts at <photo.net> and allowed NameMedia Inc to realize the <sleepspot.com> historical records were *prima facia* evidence that NameMedia Inc had violated US Title 15 § 1125(d) when offering <sleepspot.com> to the Plaintiff as can be seen in the record for $2,788. *See* Docket 25 Ex#2 "2788".

< curtisneeley.com/NameMedia/docketPDFs/2788.pdf >

Counter-claim and Rational for <namemedias.com> Use

11. Had <eartheye.com> and <sleepspot.com> never been offered to the Plaintiff, the First Amendment protest use of <namemedias.com> would never have been needed. It was used in an attempt to cause NameMedia Inc to recognize distress being caused by the display of original figurenude art and the distress caused by otherwise negatively impacting the Plaintiff's legacy. Every year when NameMedia Inc renewed the domain registration for <eartheye.com> and for <sleepspot.com>, they repeated the violation of US Title 15 § 1125(d) by conspiring with Google Inc or another party to USE each domain.

12. On roughly January 24, 2010, a new DMCA agent named Rob Rosell was discovered as "listed" by NameMedia Inc for <photo.net>. Rather than rely exclusively on the overworked and overloaded Federal Courts the Plaintiff elected to repeat the monitored DMCA notifications of Mr Rosell. Using unregulated wire communications, Mr Neeley was able to notify EVERY disclosed former website design client of Mr Rosell's and request that the original figurenude photographs be no longer displayed to minors. The images were DELETED nearly overnight as most of Mr Rosell's clientele had, ironically, been church personnel.

13. One moral DMCA agent caused the kidnapped art to be deleted after nearly half a year of unsuccessful Federal litigation. Unable to understand the rational and no longer having a valid First Amendment protest use of <namemedias.com>, the Plaintiff forwarded the domain to NameMedia Inc and did not renew the protest USE of the domain on October 15, 2010 because NameMedia Inc deleted the original figurenude art as requested.

**IV. NameMedia Inc Malicious Destruction of Original Art.**

14. December 18, 2009 in Docket #27 p.2 ¶ #2 it was disclosed as follows.

> *2. NAMEMEDIA INC denied the allegations in paragraph 2 of the Complaint while using a robots.txt file to hide evidence that was once publicly available at the Internet Archive Inc that indisputably shows that they lie to further harass Plaintiff. See Ex. SS, Ex. EE.*

Plaintiff regrets using the three-letter colloquial terminology for misleading as is seen above but even attorneys must have recognized by now that placement of the robots.txt file compounds the Plaintiff's distress. Allowing the archive of the art to remain hidden/destroyed is an outrageous failure to mitigate damages and does, in fact, increase damages now sought by becoming a joined claim.

# Google Inc

**I. Google Inc Title 15 torts**

15. Google Inc licensed <eartheye.com> and <sleepspot.com> in two direct violations of US Title 15 § 1125(d) and USED both domains while splitting profits due to the license with NameMedia Inc exclusively using them both to sell exclusively Google Inc advertisement. This USE of a domain in AdSense for Domains created two torts every year when the domain use was continued rather than being allowed to cease to resolve. *See* Lewis v Chicago, (08-974)

**II. The Google Inc first six malicious defamation torts**

16. Google Inc initially ran the image search engine at <photo.net> and still run it. This is how Google makes money while tax-exempt. Google Inc correctly attributed Mr Neeley to his original figurenude art that was displayed against his desires for almost a year during protests and litigation. Google Inc continually claimed specific permission to display original nudes before minors in violation of the Communications Act of 1934 as amended and un-enforced although even a common person in the jury will realize it was always illegal.

17. Google Inc also displayed the Plaintiff's original figurenude art to children and the conspiracy with NameMedia Inc to continue this defamation while ignoring DMCA notifications for the six nude images shown is nothing short of outrageous in forcing a parent to display nude art to their children even after asked to stop. Google Inc CEO, Eric Schmidt, said in a CNBC interview as follows during this litigation.

> **"If you have something that you don't want anyone to know, maybe you shouldn't be doing it in the first place."**

The richest man in the history of the Earth has absolutely no right to disclose art in a way that shames the artist in violation of US Title 17. Plaintiff's outrage at Eric Schmidt is unbounded.

**III. Google Inc malicious defamatory library book re-publication tort in 2010**

18. Google Inc was advised during this litigation that the Plaintiff did not wish his original figurenude art to be digitally published and especially not while using a search for his name by anonymous viewers. This can be seen in the record already in this action. Plaintiff warned Google Inc that the Plaintiff was published in a book that was in libraries and opposing Google Inc Counselor commented on this already. The Plaintiff noticed in March 2010 that several original nudes published exclusively in a library book in 2006 were scanned and re-published by Google Inc digitally while removing the disclosure of outrage posted at Google Inc Books. Google Inc announced creation of new US Title 17 alternatives via an unapproved class action settlement in the Southern District of New York as follows. "Google has reached a groundbreaking agreement with authors and publishers." *See* <books.google.com/googlebooks/agreement>

19. The Plaintiff's original figurenude art was scanned and re-published during this lawsuit and statutory US Title 17 awards are $450,000 for the three images violated. Display of them was malicious and the JURY award will easily support a punitive demand for a significant percentage of the company value for Google Inc for these three nude image re-publications.

**IV. The Google Inc malicious disparaging erect penis defamations of 2010**

20. Google Inc was advised continually that attribution to Michael Peven's erect penis photograph was no less than outrageously incensing and improper. Curtis J Neeley Jr., MFA has never seen or photographed Michael Peven's penis. The claim that the erect penis was on <curtisneeley.com> can be seen at the URL that follows.

<curtisneeley.com/NameMedia/Mandamus/Exhibits/Ex.%20Peven-Penis.pdf >

**V. The Google Inc 2009 AdWords detrimental reliance**

21. Google Inc sold the Plaintiff advertising on AdWords that ran on domains exclusively licensed to sell Google Inc AdSense for Domains. Google AdSense for Domains sold advertisement on domains actively USED by Google Inc. When sold these advertisements, the Plaintiff was led to believe these purchases were a result of *bona fide* search terms and not licensed FRAUDS or "parked" sites in violation of US Title 18 § 1343.

# Joinder of the "FCC"

## I. Federal Communications Commission Nonfeasance

22. The Plaintiff wishes to join the Federal Communications Commission (FCC) rather than again attempt to add all search engine parties to this action until appeal of the "final" ruling. The addition of the FCC is supported by Rules of CP Rule 18(a) because the FCC failed to regulate wire communications during this very action. Every exhibit that displays a nude would not be allowed broadcast on public television due to indecency. The exhibit entered at the Eighth Circuit displayed Michael Peven's erect penis photo and caused the Docket entry to be locked by the Eighth Circuit and the Plaintiff was admonished for including nudes in an exhibit.

*See* <curtisneeley.com/NameMedia/Mandamus/Exhibits/Ex.%20Peven-Penis.pdf>.

23. The UnReguLated (URL) wire communications broadcast above is indecent as are most commercial uses of wire communications as defined in the Communications Act of 1934 or the very act that created the FCC as can be seen in the first two docket entries below. The others are already in the record as exhibits attached to Docket 25. **The last URL below displays distress caused to plaintiff's minor child by the failure of the FCC to regulate wire communications**.

See <curtisneeley.com/NameMedia/Mandamus/Exhibits/1934_p8.pdf>
See <curtisneeley.com/NameMedia/Mandamus/Exhibits/1934_p90.pdf>
See <curtisneeley.com/NameMedia/docketPDFs/E.pdf>
See <curtisneeley.com/NameMedia/docketPDFs/F.pdf>
See <curtisneeley.com/NameMedia/docketPDFs/G.pdf>
See <curtisneeley.com/NameMedia/docketPDFs/K.pdf>
See <curtisneeley.com/NameMedia/docketPDFs/CHILD.pdf>

24. The Plaintiff will not reprint the exhibits because the UnReguLated (URL) wire communications listed above are locations of the actual files printed and are vastly superior to the ARWD Docket and are linked from <curtisneeley.com/5-09-cv-05151/Docket>, as is every docket entry and every exhibit since December 18, 2009. Dismissed party Network Solutions once claimed to respect the Court docket in Docket 176. The Plaintiff is very familiar with the insufficient docket entries in describing the exhibits that were actually printed and submitted.

# CONCLUSION

WHEREAS the Plaintiff moves to join four claims described above against NameMedia Inc with five claims described above against Defendant Google Inc as well as joining the Federal Communications Commission; This Motion to join claims and the FCC as a party with a single claim of nonfeasance in the same series of occurrences is allowed pursuant to Federal Rules of CP Rule 18 and Fed Rules of CP Rule 20. The Plaintiff will no longer be a pauper after resolution as is now obvious to any uninterested observer and prays again that defendant Google Inc be ordered to return no nude photos as a result of image searches for the Plaintiff's personal name. Yahoo Inc, Microsoft Corporation, and IAC/InterActiveCorp each have already done this since this action began as can be seen comparing the record to live wire searches. Google Inc alleged this would require shutting down Google Inc during the Rule 26(f) teleconference and this claim was made certifiably false by three other search parties attempting to avoid being added. Justice requires joining the preceding claims and the Federal Communications Commission to resolve the same series of occurrences allowing the supplemental pleading now attached as a supplement and not an amending and is before the last date to join established in Docket 188 (2)(a) and the FCC has been aware of this action and the FCC joinder will not further delay justice.

Respectfully submitted by hand,

Curtis J. Neeley Jr., MFA

# CERTIFICATE OF SERVICE

I hereby certify that today I will file a copy of the foregoing with the Court clerk for the United States Court in the Western District of Arkansas and the clerk will scan each document and it will be made into a B&W PDF and be available to all attorneys representing the Defendants for this case. Their Counsel will each receive notification from CM/ECF. The color PDFs that were printed from are accessible free to the public at <http://www.CurtisNeeley.com/5-09-cv-05151/Docket> immediately and perpetually by the end of the day.

**CurtisNeeley.com/5-09-cv-05151/Docket**

/s/Curtis J Neeley Jr.
Curtis J Neeley Jr, MFA