IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CURTIS J. NEELEY, JR.                                            PLAINTIFF

V.                                NO. 09-5151

NAMEMEDIA, INC.,
GOOGLE, INC.                                                    DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Comes before the Court Plaintiff's Motion for Search Engine Party Injunction against separate Defendant Google, Inc. (Doc. 184).   The motion was referred to the undersigned on October 27, 2010 (Doc. 192), and a hearing was held on this matter on December 6, 2010. At the conclusion of the hearing, the Court reserved ruling on the motion until Mr. Neeley had an opportunity to file a supplemental pleading.  Mr. Neeley has done so (Doc. 217, 220, 222), and the Court hereby makes the following report and recommendation:

1.  The parties agreed that there are two claims remaining against Defendant Google, Inc - one for trademark violations and one for the state law claim of outrage, based upon Defendants allegedly allowing minors access to photographs that are attributable to Plaintiff and indicating the photos are being displayed with his permission.  The preliminary injunction motion appears to relate only to the outrage claim, and as the Court indicated at the hearing, the injunctive relief that Plaintiff seeks in his preliminary injunction motion must be based upon the final injunctive relief he seeks in his Amended Complaint, filed on January 22, 2010.  (Doc. 53).

2.  In Plaintiff's motion, he asks that "Google Inc....be ordered not to allow nude photos to be returned when image searches include the terms "Curtis" or "Neeley" regardless of other

-1-

terms entered "unless entering user is known to be an adult and not a Muslim." (Doc. 184).  He

also states that "Google Inc. should particularly cease display of Michael Peven's erect penis

photo when My [sic] Neeley's personal name is entered as is further supported by Docket 168."

(Doc. 184).

3.   In his prayer for relief in the Amended Complaint, Plaintiff does not seek any

injunctive relief against Defendant Google, Inc.  Instead, Plaintiff requests, in pertinent part:

> that this court enter an order granting rights to Plaintiff[sic] domain name sleepspot.com
> and paying enough to allow EDATS Inc. to alter their name since they already purchased
> eartheye.com.  Plaintiff prays NAMEMEDIA INC. be ordered to transfer photo.net to the
> Plaintiff where they originally violated the nude photographs with no warning to minors.

(Doc. 53, Prayer for relief).

4.   Plaintiff argued at the hearing that he attempted to amend the complaint "about nine

ways to Sunday" to try to seek the type of relief he is seeking in the preliminary injunction

motion, but has not been allowed to so amend "because of Dennis factors."

5.   The Court advised the Plaintiff that only the claims in the January 22, 2010 Amended

Complaint would proceed at this time.  Plaintiff conceded that his request for preliminary

injunctive relief did not relate to the outrage claim set forth in his Amended Complaint and to

the relief he seeks in that Amended Complaint.  For this reason alone, Plaintiff's preliminary

injunction motion could be denied.  However, the Court will nevertheless address the merits of

the preliminary injunctive relief Plaintiff seeks.

6.   Plaintiff bears the burden of establishing the necessity of a preliminary injunction.

General Motors Corp. V. Harry Brown's, LLC, 563 F.3d 312, 316 (8th Cir. 2009).  In ruling on

a motion for preliminary injunction, the Court must consider:  (1) the threat of irreparable harm

AO72A
(Rev. 8/82)

to the moving party;  (2) the weight of this harm as compared to any injury an injunction would inflict on other interested parties;  (3) the probability that the moving party will succeed on the merits;  and (4) the public interest.  Id., citing Dataphase Sys., Inc. V. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981)(en banc).

### A.  Likelihood of success on the merits

1)   At the hearing, when asked how the nude pictures in question ended up on the internet, Plaintiff stated that he donated his pictures to "Wikipedia, foundation of Wikimedia," by uploading them on the internet.  Plaintiff does not dispute that the pictures donated to Wikimedia were taken by him and uploaded onto the internet by him.  Plaintiff concedes that anyone, including minors, would be able to go to, not just Google, but the Wikimedia site as well and access the photos.[1]

2) Plaintiff refers to a picture on page 5 of Exhibit 1, which is the previously mentioned Peven's photo.  This picture also comes up when Plaintiff's name is searched on Google. Plaintiff did not take this picture, but Plaintiff linked the picture in an entry on his blog site. Plaintiff conceded that he had the ability to remove the picture by deleting the link in his blog

---

[1] While Plaintiff attempted to distinguish the Wikimedia site from the Google site based upon a disclaimer provided by Wikimedia, the Court finds this unpersuasive.  The Wikipedia disclaimer states that the file is licensed under the Creative Commons Attribution. (Doc. 214, Exh. 1).  The Creative Commons Attribution provides:

> You are free: **to Share** - to copy, distribute and transmit the work; **to Remix** -to adapt the work; **Under the following conditions**: Attribution - You must attribute the work in the manner specified by the author or licensor (but not in any way that suggests that they endorse you or your use of the work).  **With the understanding that: Waiver** - Any of the above conditions can be **waived** if you get permission from the copyright holder.  **Public Domain -**Where the work or any of its elements is in the **public domain** under applicable law, that status is in no way affected by the license.  **Other Rights** - In no way are any of the following rights affected by the license:
> •        Your fair dealing or **fair use** rights or other applicable copyright exceptions and limitations;
> •        The author's **moral** rights;
> •        Rights other persons may have either in the work itself or in how the work is used, such as **publicity** or privacy rights.
> **Notice -**For any reuse or distribution, you must make clear to others the license terms of this work.  The best way to do this is with a link to this web page.
> Nothing in the disclaimer distinguishes the Wikimedia site to the extent that Plaintiff contends.

-3-

site.  In fact, he did just that. Plaintiff acknowledged at the hearing that he edited his blog site

recently, was able to remove the offensive photo, but that he thereafter edited the blog posts to

re-activate the links. Accordingly, it is clear that Plaintiff has, and did have, the ability himself

to remove the offensive picture of Mr. Peven.  Plaintiff also acknowledged that he could take

steps to remove his pictures from Wikimedia, and has not done so because it was just as easy for

Defendant to not show the photos to minors and Muslims.

　　　　3)   When the Court asked Plaintiff why he was suing Google, asking them to break the

link to the picture of Mr. Peven if he could do it himself, Plaintiff responded: " I believe they

should respect my wishes and not tell me that since you said you don't like that picture, it's

coming up under your name."  When asked on cross-examination why, if he was free to remove

his postings from Wikimedia, he had not done so, Plaintiff asked: "Why would I?"  Defense

counsel responded:  "To prevent Muslims and children from being able to see them."  Plaintiff

then responded: "That's easily done by asking Google not to show them."  Plaintiff conceded

that even if Defendant Google did remove the photos, they would still be available for viewing

on Wikimedia.

　　　　4)   To establish a claim for outrage, Plaintiff must demonstrate the following elements:

　　1) Defendant Google, Inc. intended to inflict emotional distress or knew or should have
　　known that emotional distress was the likely result of its conduct;
　　2) The conduct was extreme and outrageous, beyond all possible bounds of decency, and
　　was utterly intolerable in a civilized community;
　　3) The actions of Google, Inc. were the cause of the Plaintiff's distress; and
　　4) The emotional distress sustained by the Plaintiff was so severe that no reasonable
　　person could be expected to endure it.

Rees v. Smith, 2009 Ark. 169, 301 S.W. 3d 467, 471-472 (2009).  Based upon the facts in this

case, the Court does not believe Plaintiff is likely to succeed on the merits of his outrage claim

-4-

against Google, Inc., since it was not Google, Inc. who placed the pictures in question on the web in the first place, and, thus, it cannot be said that any actions by Google, Inc. are the cause of Plaintiff's emotional distress.

5) Even if Plaintiff could establish the elements of the outrage claim, Defendant Google, Inc. asserted that Plaintiff's state law claim was absolutely preempted by the Communications Decency Act, 47 U.S.C. § 230 (CDA), as it is not a content provider, but merely indexes information available on the internet. Plaintiff disagreed, stating that an internet service provider provides connectivity and that is not what Defendant does. Plaintiff asserted that the content is placed by Google on "Gstatic.com," and since Google owns Gstatic.com, it is a "content provider." However, upon further inquiry by the Court, Plaintiff conceded that if someone else uploaded a picture under his name, it would still come under Gstatic.com, and therefore, it did not mean that Google put the information there. He also contended that some of his nude photos were published in a book that was scanned by Google and placed online. In his Second Brief Supporting Motion for Preliminary Injunction, Plaintiff elaborates on his position. He states that:

> [T]he offensive images shown are stored on Google Inc computers and the offensive images are not shown directly from where found but from Google Inc computers accessed via Internet Service Providers who are protected from liability where Google Inc is the originating content provider and is not protected by the Communications Decency Act which was written to protect Internet Service Providers and not Internet Content Providers.

(Doc. 206 at p. 2).

In <u>Goddard v. Google, Inc</u>., 640 F.Supp. 2d 1193, 1195 (N.D. Cal. 2009), Plaintiff alleged that Google's involvement in creating allegedly fraudulent advertisements was so pervasive that the company controlled "much of the underlying commercial activity engaged in

by the third-party advertisers." Id. at 1196.  The Court found:

> The quoted allegations, however, are mere "labels and conclusions" amounting to a "formulaic recitation of the elements" of CDA developer liability, and as such, they "will not do."

Id. quoting from Bell Atl. Corp. V. Twombly, 550 U.S. 544, 555 (2007).   In its discussion of Google's potential liability, the Court in Goddard referred to the holding in Carafano v. Metrosplash.com, Inc., 339 F.3d 1119 (9th Cir. 2003), stating that:

> Under Carafano, even if a particular tool "facilitate[s] the expression of information," it generally will be considered "neutral" so long as users ultimately determine what content to post, such that the tool merely provides "a framework that could be utilized for proper or improper purposes."

Goddard, 640 F.Supp. at 1197 (citations omitted).

6)  The Court has considered  the pleadings as well as the information presented at the hearing and does not believe that Plaintiff's conclusory allegations are sufficient to take Google out of the protection of the CDA in this case.  The Court believes that Plaintiff has failed to present any evidence that Google Inc. was anything other than an internet service provider in this matter, and accordingly, his state claim of outrage against Google would be pre-empted, pursuant to 47 U.S.C. § 230(c)(1).  Johnson v. Arden, 614 F.3d 785, 791 (8th Cir. 2010)(holding that the CDA provides Internet Service Providers like InMotion with federal immunity against state tort defamation action that would make service providers liable for information originating with third-party users of the service).

7) Based on the foregoing, the Court concludes that Plaintiff is not likely to succeed on his outrage claim.

-6-

.   **B.  Irreparable Harm**

1)   "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages.  <u>General Motors Corp. V. Harry Brown's, LLC</u>, 563 F.3d 312, 318-19 (8th Cir. 2009).

2)   In support of his argument of irreparable harm, Plaintiff contends that three other corporations (IEC, Yahoo and Microsoft) have stopped showing the offensive pictures and that Google is the most popular for kids to use.  At the hearing, the Court asked counsel for Google, Inc. how difficult it would be for them to remove the photos.  Defense counsel stated that it would require "an insane amount of effort."  He continued:

> For one thing, search is completely automated.  It goes out, it crawls the web, it sees what's there, and it reports it back.  The machine has no way of knowing whether a picture is nude, whether the person searching for it is Muslim.  All it knows is that there are some bits out there that say Curtis Neeley and there are other bits on the same page and there are pictures.

When the Court asked counsel for Google, Inc. if it would be possible to just stop any photographs from it, counsel stated:

> Yes. But if you go and do a Google search for Curtis Neeley, you'll find that there are a lot of Curtis Neeleys in the world, and a lot of them have posted a lot of their photographs, and you can see the birthday parties of innumerable Curtis Neeleys out there.  There is no way for us to selectively go in and block the people who happen to be searching for this Curtis Neeley.

3)   At the conclusion of the hearing, Plaintiff stated that he would ask Wikimedia to block Google from indexing the photos and if they could not, he would try and get the photos deleted.  Plaintiff was to file with the Court a supplemental brief advising the Court of his efforts to have the photos removed.  In his "Final Supplemental Brief" filed on December 15, 2010 (Doc. 222), Plaintiff states that he has attempted to "contact every website that caused a

-7-

figurenude or nude to be shown in a Defendant Google Inc. image search for 'Curtis Neeley.'" With respect to Wikipedia.com and Wikimedia.com, Plaintiff stated that he has taken action that should result in "most of the images that were in Google, Inc. image search because of the Wikipedia Foundation to no longer be in searches for "Curtis Neeley" because the Plaintiff's name is no longer on the page." With respect to FineArtAmerica.com, Plaintiff stated that he stopped selling all of the figurenude photographs that were returned in searches. Plaintiff also contacted a Spanish language poetry site wherein the owner of a poem had used a moonlight figurenude by Plaintiff to illustrate a poem about moonlight. The owner removed the picture and replaced it with another nude that was not done by Plaintiff. Unfortunately, Plaintiff's other supplemental pleadings are very confusing, and it is difficult to determine just exactly what Plaintiff has accomplished, pursuant to the Court's directives.

4) Plaintiff has failed to prove that absent an injunction, he will suffer irreparable harm. Plaintiff advised the Court that the pictures in question have been on the internet for two years. It is clear that Plaintiff himself was responsible for placing the nude photos online, and linked the photo of Mr. Peven in his own blog site.

5) Finally, as indicated above, Plaintiff apparently had the ability to remove the photos from the website prior hereto. Accordingly, Plaintiff has failed to establish the likelihood of irreparable harm.

In light of the above findings, it is not necessary to address the remaining two factors set forth in determining whether a preliminary injunction should issue (the weight of the harm as compared to any injury an injunction would inflict on other interested parties, and the public interest). See Oglala Sioux Tribe v. C&W Enters., Inc., 542 F.3d 224, 233 (8th Cir. 2008)(ceasing

-8-

a Dataphase analysis after finding no likelihood of success on the merits).

The Court notes that at the hearing, Plaintiff was admonished for making disparaging statements regarding any judge or opposing counsel, and directed to refrain from future similar comments.  The Court notes however, that even in one of Plaintiff's most recent filings (Doc. 220), which was filed subsequent to the hearing, Plaintiff again referred to "old judges," "older judges," and "elderly judges."  These comments serve no purpose in the pleadings and Plaintiff is again directed to refrain from making such comments.

Based upon the foregoing, the Court recommends that Plaintiff's Motion for Search Engine Party Injunction be DENIED.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Entered this 16th day of December, 2010.

/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)