# IN THE UNITED STATES COURT FOR THE WESTERN DISTRICT OF ARKANSAS

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
FEB 0 7 2011
CHRIS R. JOHNSON, Clerk
By
        Deputy Clerk

Curtis J Neeley Jr., MFA

v.

CASE NO. 5:09-cv-05151

NameMedia Inc.
Google Inc.

## Brief Supporting Motion for Reconsideration of Dockets 233 and 125

Plaintiff comes now respectfully and requests reconsideration of the order denying the preliminary injunction requested in Docket 184. Plaintiff will not again delay the trial but herein requests that Honorable Jimm Larry Hendren reconsider Docket 223 and Docket 125 rather than leaving justice pending until the trial in July. The portion of the statutes that should apply follow and are then explained:

> **Libel and slander. 16-63-207 (a) (1)** In an action for libel or slander, it shall not be necessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose. It shall be sufficient to state generally that the defamatory matter was published or spoken concerning the plaintiff.
>
> **TITLE 17 > CHAPTER 1 > § 106A (a) (2)** shall have the right to prevent the use of his or her name as the author of the work of visual art in the event of a distortion, mutilation, or other modification of the work which would be prejudicial to his or her honor or reputation;
>
> **TITLE 47 > CHAPTER 5 > SUBCHAPTER II > Part I > § 230**
> Protection for private blocking and screening of offensive material

## I. State Claim of Defamation not Recognized

1. Docket 233 addressed considering the State claim of outrage as follows:

   > 2. *Neeley's outrage claim is based on allegations that NameMedia and Google have conspired to allow, and are currently allowing, minors access to nude photographs taken by Neeley, while contending that such access was allowed by Neeley himself.*

   The claim of outrage establishes a high bar for prosecution not applicable to defamation. Outrage is not easily brought against any claims besides the most outrageous actions. (i.e. Civil suits regarding criminal acts.) The Courts have created this high bar to allow use of this claim in rare civil cases and sets the bar high to prevent civil use unless the Defendant is almost a convict.

2. The statute addressing libel and slander do not erect this high bar for prosecution and, in fact, include grounds for sufficient prosecution stated generally to be that the defamatory matter was published or spoken concerning the Plaintiff.

3. Google Inc and NAMEMEDIA INC conspired to return nude and figurenude images and claimed this in writing to be authorized by the Plaintiff and is p*er se* libel that should have already been determined from evidence in the record. *See* Docket 25 Exhibits (6, 9, 11, and 18) labeled (E, F, G, and K) respectively in the record **more clearly presented** on the Plaintiff's mirror of the docket, as is disclosed on every Certificate of Service.

4. The conspiracy to defame by libel was halted by NAMEMEDIA INC after half a year in Federal Court the day after the second NAMEMEDIA INC DMCA agent Robb Rosell was notified. The Plaintiff also notified every website client Mr Rosell had disclosed. *See* Docket 69 Exhibit 8 labeled R-HIDE.

5. Google Inc is the **ONLY** search engine continuing to display nudes and figurenudes CORRECTLY ATTRIBUTED to the Plaintiff currently though not initially for "Curtis Neeley" searches. Google Inc is thereby implying permission to display these to minors by harvesting them from other locations in spite of this complaint and continuing to publish these defamatory matters to children. Revealing figurenude art creation in another wire venue **does not agree** to allow presentation of the figurenude art at another site like <images.google.com>.

No agreement was made with Google Inc and the USE of the original art to sell ads to children who search for "Curtis Neeley" is *per se* defamation.

## II. Federal Claim of US Title 17 § 106A (a) (2) Not Recognized

1. The US Title 17 claim was not recognized due to the Plaintiff not stating the statute violated as being US Title 17 § 106A(a)(2) as listed on the first page. Honorable Jimm Larry Hendren addressed this claim as follows:

> *The right Neeley appears to be referring to is the right of an author "to prevent the use of his or her name as the author of any work of visual art which he or she did not create." 17 U.S.C. § 106A(a)(1)(B).*

This consideration is appreciated but the Plaintiff was not concerned in the least that random images not personally created by the Plaintiff were returned for "Curtis Neeley" searches. The Plaintiff has had moral "copyrites" in the United States since the 1990 passage of the Visual Artists Rights Act or US Title 17 § 106A(a)(2) as listed on the first page.

2. The violated right has not been recognized in US Courts sufficiently and is not taught in schools due to the fact that US Title 17 § 106A(a)(2) changed United States law after over 220 years of rejecting the existence of moral rights to protect original art after signing the Berne Treaty.

3. The right to prevent *"other modification of the work which would be prejudicial to his or her honor or reputation"* has not been considered by any United States Court Plaintiff encountered besides Judge Lipez, writing for the unanimous panel in the U.S. Court of Appeals for the First Circuit stating, *"Moral rights protect the personality and creative energy that an artist contributes to his or her work"* adding, *"That convergence between artist and artwork does not await the final brush stroke or the placement of the last element in a complex installation"* in *Mass MOCA, 565 F. Supp. 2d 245*

4. A visual work includes the manner it is displayed much like hanging a flag upside down immediately signals distress. "Hanging" Plaintiff's figurenude art so that searches for the Plaintiffs personal name returns properly attributed figurenude photographs to minors violates moral integrity allegedly protected since the Visual Artist's Rights Act was adopted in 1990. This passage finally prepared the United States for the second millennium although as the last developed country on Earth to begin recognizing moral rights for visual art.

## III. US Title 47 § 230 Not Recognized or Considered

1. Google Inc alleged entitlement to protections giving *most* internet services immunity from State claims. The cases Google Inc cited involved display of caches of Usenet *text* disparagements or presentation of *text* advertisements by third parties. Google Inc asserts this entitlement in this action when not presenting entire caches or third party material. Google Inc has, in fact, become an Internet content provider as explained in Docket 206 with the exhibit attached but confused and then listed to be with Docket 207 by the severely brain injured Plaintiff in error.

2. Google Inc has subverted the statute titled as listed in page one as follows from Docket 229 to instead protect pandering of pornography in opposition to the Congressional intent:

> See *Parker v. Google, Inc.*, 242 Fed. Appx. 833, 837 (3rd Cir. 2007); see also, *Goddard v. Google*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009) (Google, as an online service provider, is immune to state law claims such as defamation);

The non-precedential *Parker* decision cited the Third Circuit ruling citing *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003) stating, "[t]hrough § 230, *Congress granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party. As a result, Internet publishers are treated differently from corresponding publishers in print, television and radio*", with internal quotation shown in italics. This was followed immediately with the following with emphasis here added:

> *In this case*, there is no doubt that Google qualifies as an "interactive computer service" and not an "information content provider." Thus, it is eligible for immunity under § 230.

3. Honorable Jimm Larry Hendren can now see the *non-precedential* finding was couched with "[i]n this case" and yet Google Inc uses *Parker* to support the claim in the case now before the court. Google Inc claims to be an "online service provider" in spite of irrelevant cases cited and in spite of no protection from liability given by the statute for "online service providers" who provide content. *Parker v Google* involved cached verbatim copies of third party *textual* disparagements instead of the creation of new content based on portions of material harvested from third parties and presented with all context removed as done in Google Inc image searches.

4. Google Inc then cited *Goddard v. Google,* 640 F. Supp. 2d 1193 (N.D. Cal. 2009). The separate and presumptuous Defendant cited a case that involved advertisements served by Google Inc EXACTLY as created by third-party advertisers in Google Inc AdWords. Plaintiff *agrees* with the holdings in the case cited. The *Goddard* ruling recognizes that the presenter of an online advertisement could not be treated as the speaker of the advertisement. In the action now before Honorable Jim Larry Hendren, Google Inc must hope this court will not read the cited cases or even their summaries.

5. Honorable Jimm Larry Hendren did not consider the EVIDENCE attached to Docket 206 because of a legal mistake by the severely brain injured *pro se* Plaintiff. Google Inc will, of course, now cite this case in future litigations although no facts regarding applicability of US Title 47 § 230 to Google Inc were considered in the least. Most cases cited in error were not considered. Citing two dissimilar *text* cases underscores this fact while considering visual art.

## IV. Forays into the Hinterlands

1. This litigation is filled with errors that warrant appeal after the JURY trial is complete without any question. These appealable issues could have and would have been addressed at a hearing before Honorable Jimm Larry Hendren. The United States Court for the Western District of Arkansas has scheduled the trial and discovery is well in progress against the two allowed defendants.

2. Google disclosed the fact that they began licensing &lt;eartheye.com&gt;, and &lt;sleepspot.com&gt; three years after NAMEMEDIA INC "cybersquatted" in Docket 235 as follows:

> *The conspiracy claim fails because the alleged wrongful acts occurred in 2003 and there was no relationship whatsoever between the alleged coconspirators (Google and (NameMedia) until three years later.*

This assertion flies in the face of their prior assertion that the claim once failed due to limitations. Despite the Plaintiff's "frequent forays into the hinterlands [this is] a very simple case". Defendant Google Inc admitted licensing &lt;eartheye.com&gt;, and &lt;sleepspot.com&gt; from NAMEMEDIA INC in 1996 in Docket 235. Until January 26th 2006, the Plaintiff was legally incompetent.

3. Defendant Google Inc was foraying into less traveled areas of law hinterlands [sic] and encountered a *pending* Motion for Summary Judgment. The Plaintiff was unaware of this *pending* Motion for Summary Judgment and would prefer Google Inc Counselors disclose the docket number of the *pending* motion encountered while out in the hinterlands [sic] of law.

## V. Conclusion and Review of FACTS

1. The Plaintiff does not feel lost in the Hinterlands and agrees that this litigation should be fairly simple. A JURY is likely to agree. This litigation has not been before a jury for trial but has already resulted in a great deal of relief after Microsoft Corporation, Yahoo Inc, and IAC/InterActiveCorp marginally complied for searches for "Curtis Neeley" as is reflected clearly in nearly <u>illegible</u> docket exhibits mutilated by scanning to B&W by the Court Clerks.

2. The **INTEGTRITY** of Plaintiff's art can not be protected by this Court using the incorrect claims now recognized and while not allowing amending to add the Federal Communications Commission in order to require regulating wire communications as the Communications Act requires.

3. US Title 47 § 230 safe harbor provisions require Defendants to conclusively prove applicability as was historically done in cited cases but not addressed in the least herein.

4. The Plaintiff will appeal the final ruling due violations of the intent of the Federal Rules of CP by *"Dennis Factors"* being allowed to prevent amending without listing rational besides repetitive attempts to amend. The Plaintiff, however, will not file another interlocutory appeal for perpetually pending motions or anything to delay the ultimate appeal.

5. The Federal Communication Commission is very aware of this litigation and could easily complete discovery in time for the current trial date.

6. The Plaintiff understands the denial of additional interrogatories at this time and desires this action to resolve as soon as possible.

7. Google Inc visited a library in New York and scanned three of the Plaintiff's original figurenudes and uploaded them during this litigation in January 2010 despite being asked not to do this repeatedly. The Google Inc claim that the Plaintiff contributed every disparaging figurenude image by "posting them to the Internet" is contrary to facts shown in the record.

8. Google Inc already attempted to settle for "copyrite" violations with the Authors Guild in New York and this "simple case" in Arkansas is related to two actions in New York.

9. Defamation creates <u>immediate</u> harm to the person and the Plaintiff will try and cause Google Inc to no longer be used at the Plaintiff's children's schools due to the Google Inc status as the only search engine to intentionally continuing defamation of the Plaintiff in image searches after advised it was offensive.

10. The Plaintiff has contacted IAC/InterActiveCorp Counselors and the Wikipedia Foundation Oversight Committee and has ceased sales and display of the unsigned offerings at <fineartamerica.com> in order to automatically cause Google Inc to stop defamation. These actions by the Plaintiff required violation of Constitutional Rights to Free Speech or self-censoring and were done in late 2010 with few automatic results yet reflected.

Whereas the Plaintiff respectfully prays Honorable Jimm Larry Hendren reconsider the orders of Dockets 125 and 233 addressing Dockets 111 request to amend and Docket 184 Motion for Preliminary Injunction; The Plaintiff <u>respectfully</u> prays that Honorable Jimm Larry Hendren then grant provisional leave to file a concise replacement complaint involving only the two currently served Defendants and the Federal Communications Commission. The provisional replacement complaint would focus on JUSTICE. This "simple case" will impact the Internet more than anything has since electricity was discovered regardless. History will record either Internet decency beginning in United States Court for the Western District of Arkansas or beginning in political venues and appeals of this litigation.

Respectfully,

*Curtis J. Neeley Jr.*

Curtis J. Neeley Jr. MFA

# CERTIFICATE OF SERVICE

I hereby certify that today I will file a copy of the foregoing with the Court clerk for the United States Court in the Western District of Arkansas and the clerk will scan each document and it will be made into a B&W PDF and be available to all attorneys representing the Defendants for this case. Their Counsel will each receive notification from EM/ECF. The color PDFs that were printed from are accessible free to the public at <http://www.CurtisNeeley.com/5-09-cv-05151/Docket> immediately and perpetually by the end of the day.

**CurtisNeeley.com/5-09-cv-05151/Docket**

/s/Curtis J Neeley Jr, MFA
Curtis J Neeley Jr, MFA