**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**


**CURTIS J. NEELEY, Jr.**                                                    **PLAINTIFF**

**VS.**                              **CASE NO. 5:09-cv-05151-JLH**

**NAMEMEDIA, INC.**
**and GOOGLE, INC.**                                          **DEFENDANTS**


**BRIEF IN SUPPORT OF MOTION FOR PARTIAL**
**SUMMARY JUDGMENT ON PLAINTIFF'S CYBERSQUATTING CLAIMS**


Defendant NameMedia, Inc. ("NameMedia"), for its Brief in Support of Motion for

Partial Summary Judgment on Plaintiff's Cybersquatting Claims, states as follows:

**I.        Introduction**

Plaintiff Curtis J. Neeley, Jr. ("Neeley") has sued NameMedia for violation of the Anti-

Cybersquatting Consumer Protection Act ("the ACPA")[1] in relation to two domain names

formerly registered to him - eartheye.com and sleepspot.com.   However, he allowed his

registration of both domains to expire in 2002 or 2003.   Contrary to Neeley's apparent belief,

neither the ACPA nor any other law gives a former registrant of a domain a perpetual right to the

domain, even after the registration expires.  Operating under this misbelief, Neeley seeks revenge

against NameMedia for its registration of the domains after he let his registrations lapse.  It truly

---

[1] 15 U.S.C. §1125(d).  The ACPA was enacted in 1999 as an addition to the Lanham Act.


**NAMEMEDIA INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT –Page - 1 -**

is revenge that motivates Neeley's suit, as Mr. Neeley admits in his deposition that he has incurred no monetary damages as a result of any action taken by NameMedia.

Irrespective of Neeley's motives, he has no ACPA case.  In order to recover under the ACPA, Neeley must prove that NameMedia registered, trafficked in, or used the domain names with a "bad faith intent to profit" from a trademark owned by Neeley which is distinctive in character.  NameMedia is entitled to summary judgment on Neeley's ACPA claims for the following independent reasons:  (1) Neeley has no evidence that NameMedia ever acted with a bad faith intent to profit from any trademark owned by Neeley; (2) Neeley cannot sustain an ACPA claim as to sleepspot.com because "Sleep spot" is not a distinctive mark, and (3) Neeley cannot sustain an ACPA claim as to eartheye.com because he has abandoned any use of any common-law "Eartheye" trademark he may have once owned.

Additionally, and in any event, NameMedia is entitled to at least partial summary judgment as to Neeley's damages claim.  It is entirely unclear from Neeley's complaint whether he seeks actual or statutory damages for his cybersquatting claims.  However, Neeley admits in his deposition that he has no actual damages as a result of any action taken by NameMedia with regard to either of the domains.  If Neeley elects to pursue statutory damages, the ACPA allows an award of statutory damages per violation in the range of $1,000 to $100,000 as the court considers just.  In this case, *any* amount of statutory damages awarded will amount to a sheer windfall to Neeley.  Therefore, the Court should enter summary judgment that in any event, Neeley's damages will be limited to the statutory minimum of $1,000 for each claim of cybersquatting.

NAMEMEDIA INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT –Page - 2 -

**A.**   **Neeley has no evidence that NameMedia acted with any bad faith intent to profit from any trademark owned by Neeley.**

Central to a claim under the ACPA is the requirement that Neeley prove a bad faith intent to profit by NameMedia from some trademark owned by Neeley.  The undisputed facts of this case do not allow a conclusion that NameMedia acted with *any* intent to profit from a trademark of Neeley's, much less a bad faith intent.  NameMedia registered the domain eartheye.com on July 2, 2003 and the domain sleepspot.com on October 15, 2003 with no knowledge of Neeley, his prior registration(s) of the domain name(s), or of Neeley's geographically remote use of his, at best, common-law trademark.  Neeley makes his ACPA claims in spite of these facts, and the additional undisputed facts that he:  (1) had allowed his registration of the domains to expire in 2002 or 2003; (2) waited four or five years after he allowed his domains to expire to contact NameMedia on November 29, 2007 about eartheye.com; (3) waited six or seven years after the expiration date to mention sleepspot.com for the first time on February 3, 2009 (and never asserted any right to it prior to filing suit); and (4) ignored NameMedia's repeated requests for information to substantiate his claim of rights superior to those of NameMedia in the registration of the eartheye.com domain.

In his deposition, Neeley was asked to state all the reasons he contends that NameMedia acted in bad faith with regard to eartheye.com, and he never mentioned any intent of NameMedia to profit from any trademark of his.  Instead, his answer was that NameMedia (1) registered the domain name when it had a usage "history," which Neeley said he believes is inherently in bad

faith, and (2) offered to sell the domain to Neeley,[2] which Neeley also claimed to be inherently in bad faith if the subsequent owner of a domain name offers to sell a domain name *before* the previous owner approaches the subsequent owner about the domain. However, Neeley expressly admits that the offer would *not* be in bad faith if the subsequent owner made the offer after the previous owner approached the subsequent owner. In this case, there is no evidence whatsoever that NameMedia even knew Neeley existed, much less mentioned the possibility of purchasing the domain to Neeley prior to Neeley's first contacting NameMedia on November 29, 2007. Therefore, Neeley admits that NameMedia's "offer" to him to purchase eartheye.com was not in bad faith.

Even if one were to look past Neeley's admissions in his deposition, there is simply no reasonable basis for a trier of fact to conclude that any action taken by NameMedia with regard to either of the domains was done with a bad faith intent to profit from a trademark. As to registration of the domains, Neeley has no evidence that NameMedia even knew he existed, much less knew of any trademarks of his, when it registered the domains in 2003.[3] As to "offering" eartheye.com to Neeley, there is no evidence whatsoever that NameMedia ever made any communication to Neeley amounting to an "offer" for him to purchase the domain.

---

[2]  As will be set forth below, NameMedia never "offered" to sell the domain to Neeley at all. On three occasions NameMedia broached the subject of his purchasing the domain in resolution of the dispute, but there was never an offer of sale by NameMedia.

[3]  Registration is the only action which NameMedia can possibly be accused of taking with regard to sleepspot.com. It has not sold the domain, nor did Neeley ever mention the possibility of purchasing it to NameMedia. And as with eartheye.com, NameMedia did not ever affirmatively approach Neeley about sleepspot.com, for the purpose of selling it to him or any other purpose.

**NAMEMEDIA INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** –Page - 4 -

Furthermore, even assuming Neeley ever had any trademark rights in "Eartheye" and "Sleepspot," such trademarks would have been so hopelessly obscure that it would be the height of absurdity to conclude that NameMedia singled them out for exploitation in an attempt to extort money from Neeley. Neeley's use of "Eartheye" in the past was for a fledgling photography studio in Fayetteville which is no longer in business. His use of the "Sleep spot" name was for an online hotel reservation system as to which Neeley only remembers one sale.

In short, though Neeley is obviously very angry at NameMedia for registering two domains he allowed to expire, he simply has no evidence which would permit the trier of fact to conclude that NameMedia took any action with an intent to profit from a trademark owned by him. For this reason NameMedia is entitled to complete summary judgment on Neeley's ACPA claims.

**B.    Neeley cannot sustain an ACPA claim as to sleepspot.com because "Sleep spot" is a merely descriptive mark with no secondary meaning.**

Under the ACPA, in order for a mark to be protected it must be distinctive in character. If a mark is descriptive of the product or service it identifies, it must have secondary meaning in the minds of the consuming public in order to acquire distinctiveness. Neeley has no viable ACPA claim as to sleepspot.com because the name "Sleep spot" is merely descriptive without secondary meaning. He alleges he once used "Sleep spot" to market an online hotel reservation system where one could, in Neeley's own words, find a "spot to sleep." Thus, the mark directly describes the service it was used to identify. Since Neeley has no proof of any secondary

meaning attached to his use of "Sleep spot", he has no distinctive mark in "Sleep spot" for which he has a viable cause of action under the ACPA.

**C.      Neeley cannot sustain an AICPA claim as to eartheye.com because he has abandoned any rights in the "Eartheye" mark he may have once owned.**

The undisputed evidence – including Neeley's admission in his deposition  – shows that he has abandoned any trademark he may have once had in the name "Eartheye."  Neeley once used the name for a short-lived photography studio he operated in the late 90's and early 2000's. However, the studio no longer exists, and there is no evidence that Neeley is currently using the name in a manner which is entitled to protection under the Lanham Act.  Furthermore, Neeley admits in his deposition that he has no future plans to use the name in a manner protectable as a mark under the Lanham Act.  As a result, Neeley has no present trademark rights in "Eartheye" which are protectable under the ACPA.  For this additional reason, complete summary judgment should be granted to NameMedia on Neeley's ACPA claim as to eartheye.com.

**D.      In any event, NameMedia is entitled to summary judgment on the issue of damages as to Neeley's ACPA claims.**

The ACPA gives the Court the discretion to constrain any award of statutory damages to an amount it deems just under the circumstances.  Neeley admits in his deposition that he has suffered no monetary loss as a result of any action taken by NameMedia with regard to the domains.  For this reason, any award of statutory damages to Neeley would be a sheer windfall, and justice requires that the Court grant summary judgment that in any event, Neeley's damages will be limited to the statutory minimum of $1,000 per ACPA claim

## II.     Facts

**A.      Undisputed Facts Establishing Lack of Bad Faith Intent to Profit.**

The WHOIS[4] domain history database of DomainTools (a company which provides historic internet domain name information)[5], indicates that Neeley first registered the domain eartheye.com on April 17, 1997.[6] Evidently Neeley opted for a five-year term of registration for eartheye.com, as the DomainTools history indicates that Neeley's registration of eartheye.com was to expire five years later on April 18, 2002. Neeley told NameMedia in a January 26, 2009 email that his registration of eartheye.com expired while he was in a coma caused by his September 3, 2002 automobile accident.[7] However, Neeley has produced no evidence that this is true. The DomainTools database instead indicates that his registration of eartheye.com expired more than four months prior to his accident. According to Neeley's deposition testimony,[8] he was in a coma for "six weeks and two days" after his accident.[9] There is no evidence that his registration of the domain expired during this time window.

---

[4]  WHOIS is a query/response protocol which "is widely used to provide information services to Internet users", including registered domain names. It obtains this information from computers containing the information known as "WHOIS servers." *See* Exhibit "A", Internet Engineering Task Force Request for Comment (RFC) 3912.

[5]  *See* Exhibit "B", DomainTools Company Information.

[6]  *See* Exhibit "C", eartheye.com history from DomainTools.

[7]  *See* Exhibit "D", January 26, 2009 mass advertisement email and Neeley's response. The context of this email is explained *infra*.

[8]  Neeley was deposed on December 10, 2010. Cited portions of his deposition are attached as Exhibit "E."

[9]  *See* Exhibit "E", Deposition of Neeley, p. 30.

NameMedia registered the eartheye.com domain on July 2, 2003.[10]  When it registered the domain, NameMedia knew nothing of Neeley, his geographically remote use of his common-law trademark, his past registration or prior use of eartheye.com.   Neeley first contacted NameMedia about the domain on or around November 29, 2007, claiming he was the former registrant and rightful owner of the domain.   On this date Neeley ultimately spoke with Ted Olson, a Domain Name Consultant for NameMedia.   In this conversation, Neeley asserted that he was the rightful owner of the domain name, but told Mr. Olson only that he was the prior registrant and owner of the domain and that his registration of the eartheye.com domain had expired while he was in a coma.[13]  Mr. Olson followed up the conversation with an email dated November 29, 2007 instructing Neeley to submit documentation to NameMedia's legal department  supporting his claim to the domain.[14]  Mr. Olson also stated that if Neeley should change his mind and would instead like to buy the domain, to let Mr. Olson know.[15]  At the time he wrote this email, Mr. Olson knew nothing of any trademark or trademarks owned or claimed by Mr. Neeley which Neeley claimed to be violated by NameMedia with regard to the domain.[16]

---

[10]   *See* Exhibit "F", eartheye.com WHOIS entry from DomainTools.   That this registration was by NameMedia is evidenced by the "buydomains" website and email listing.   "BuyDomains is the name of NameMedia's advertising division (*see* page 9 *infra*).

[13]   *See* Exhibit "G", Declaration of Ted Olson, ¶ 2.

[14]   *Id.*, ¶ 3.

[15]   *See* Exhibit "H", November 29, 2007 email from Ted Olson to Curtis Neeley.

[16]   *See* Exhibit "G", Declaration of Ted Olson, ¶ 4.

Neeley never complied with Mr. Olson's request for documentation.[17]  NameMedia again heard from Neeley a year and three months later on January 26, 2009, when he replied to a mass-mailed advertisement of a "Winter Savings Event" being held by NameMedia.[18]  This email bore the name and email address of Jason Miner, Vice President of Sales for BuyDomains (the name for NameMedia's domain sales division), which was automatically generated to thousands of recipients in NameMedia's sales database.[19] The mass email was sent to Neeley because he used NameMedia's web-based price request interface to contact BuyDomains with regard to the domain on February 7, 2008.[20] At the time this email was sent, Jason Miner knew nothing of Neeley's existence or any trademark or trademarks owned or claimed by Neeley.[21] In his reply, Neeley baldly accused NameMedia of "[taking] advantage of a domain that was registered and being used by am (sic) artist to become unjustly enriched and to exploit a severely disabled."[22] The only assertion of disputable fact was that his registration of the domains expired while he

_____

[17]  *See* Exhibit "I", Declaration of Erik Zilinek, ¶ 9.  Mr. Zilinek was at all relevant times internal Legal Counsel to NameMedia.

[18]  *Id.*, ¶ 10; Exhibit "D", January 26, 2009 mass advertisement email and Neeley's response.

[19]  *See* Exhibit "J", Declaration of Jason Miner, ¶ 2.  Mr. Miner is, and was at all times relevant, Vice President of Sales for BuyDomains, NameMedia's advertising division.

[20]  *Id.*; Exhibit "K", Neeley Price Request for eartheye.com dated February 7, 2008.  Additionally, an example of NameMedia's Price Request interface for sleepspot.com is attached as Exhibit "L."

[21]  *See* Exhibit "J", Declaration of Jason Miner, ¶ 3.

[22]  *See* Exhibit "D", email from Neeley to Jason Miner dated January 26, 2009.

was in a coma.  Otherwise, the response is limited to Neeley's vowing to sue NameMedia for

registering, as Neeley repeatedly stated, "MY domain."

On January 30, 2009, in response to Neeley's January 26 email, Erik Zilinek sent a letter

to Mr. Neeley setting forth the applicable law of cybersquatting under the ACPA, and stating that

in evaluating Neeley's claim that NameMedia would consider any evidence of any registration of

an "eartheye" trademark by Neeley, or any evidence of a distinctive or famous "eartheye" mark

owned by Neeley.[23]

On February 3, 2009, Neeley wrote an email to Mr. Zilinek of NameMedia in response to

the January 30 letter.[24]  This email made only vague assertions regarding Mr. Neeley's claimed

right to the domains.  Regarding eartheye.com, he stated only that the domain name was "listed

on his business letterhead."  He then nebulously stated, without further explanation, that "[t]he

use of Earth Eye Images by myself can be traced uncontrovertibly to 5/5/1992." If with this

statement Neeley intended to convey an assertion of a trademark, he did a very poor job of it, as

he said nothing about any goods or services as to which he claims he was using or had used a

mark identical to or confusingly similar to either domain.[25]  As to sleepspot.com, he stated only

_____

[23]  *See* Exhibit "M", letter dated January 30, 2009.

[24]  *See* Exhibit "N", email from Neeley to Erik Zilinek dated February 3, 2009.

[25]  It is also telling that this email was the first time that Neeley had supported his claim with language even
remotely approaching an assertion of a trademark right, and it was made on the heels of Mr. Zilinek's letter in which
he explained the elements of a cybersquatting claim under the ACPA to Neeley.

that he was the original registrant and noted that NameMedia now owned it as well.  This was the first time Neeley had mentioned the sleepspot.com domain to NameMedia.[26]

After Neeley failed to present any substantive information to NameMedia supporting his claim to the eartheye.com domain, Mr. Zilinek wrote a letter to Neeley stating NameMedia's position that Neeley's claim to the domain was without merit.[27]  Mr. Zilinek also stated that if Mr. Neeley wanted to instead negotiate a mutually agreeable price for the domain registration, he should contact NameMedia's sales team.

But again Neeley took no affirmative step to regain ownership of the eartheye.com registration.  NameMedia sold the eartheye.com domain on April 6, 2009 to a Florida company named "eartheye" which is in the business of, among other things, topography mapping and aerial photography.[28]  This company currently uses the domain to advertise its business.[29]

The WHOIS database at DomainTools indicates that Neeley first registered sleepspot.com on July 30, 1999, and that his registration was to expire on July 30, 2003.[30]  Neeley never mentioned the sleepspot.com domain until his February 3, 2009 email.[31]

---

[26]  *See* Exhibit "I", Declaration of Erik Zilinek, ¶ 7.

[27]  *Id.,* ¶ 9; Exhibit "O", Letter from Erik Zilinek to Neeley dated February 13, 2009.

[28]  *See* Exhibit "I", Declaration of Erik Zilinek, ¶ 13.

[29]  *See* Exhibit "P", eartheye.com site.

[30]  *See* Exhibit "Q", sleepspot.com history from DomainTools.

[31]  *See* Exhibit "I", Declaration of Erik Zilinek, ¶ 7.

NameMedia registered sleepspot.com on October 15, 2003.[32]   At the time it registered sleepspot.com, NameMedia knew nothing of Neeley, any trademarks of his, or his past registration or prior use of the domain.

Neeley was asked at his deposition to state all of the actions by NameMedia which he believed were undertaken in bad faith as to eartheye.com. Neeley identified only two actions: (1) NameMedia's registration of the domain and (2) offering to sell him the domain when he had previously owned it.  The testimony was as follows:

> Q.    So I'm asking you, what do you believe was in bad faith that my client did with regard to Eartheye.com?
>
> A.    Offering a domain to me that I had had for years and years, and then telling me that my situation was irrelevant.
>
> Q.    What -- what did they say that -- that -- that you interpreted as them telling you your situation was irrelevant?
>
> A.    They had Erik Zilinek contact me.
>
> Q.   Uh-huh.
>
> A.    And, basically, tell me that he felt that it was their -- it was no problem.  It was perfectly okay to be theirs, and that if I wanted it I should bid on it.
>
> Q.    Okay.  Is there anything else that you think my client did that was in bad faith with regard to Eartheye.com?
>
> A.    When they registered it and began using it in AdSense for Domains, they were using the fact that it had a history and had traffic already.
>
> Q.   Okay.  Anything else?

---

[32]   *See* Exhibit "R", sleepspot.com WHOIS entry from DomainTools.

A.   No.[34]

When asked why the registration of eartheye.com (as well as sleepspot.com) was in bad faith, Neeley stated he believes it is inherently in bad faith for someone to register a domain name for the sole purpose of selling it to another if the domain has a "documented history."  The testimony was as follows:

Q.   Okay.  Well, why -- tell me -- do you believe that my client's registration of Eartheye.com and SleepSpot.com was made in bad faith?

A.   Yes.

Q.   And tell me why you believe that.

A.   They did not mean to sell anything through the Earth Eye at all.  They did not -- were not going to sell anything to do with Earth or the eye, or sleep or the spot, or sleep -- there's nothing descriptive.  They were just going to sell the domain name at a premium.  Had nothing to do with why they actually registered the domains.

Q.   And are you saying that you believe any time someone registers a domain name for the sole purposes of selling it to someone else, that is, per se, bad faith?  Is that what –

A.   Yes, sir.

Q.   That's what you're saying?

A.   Yes, sir.
---

Q.   Okay.  Now, based upon what you've told me, and, again, correct me if I'm wrong, you don't believe that when they registered it -- I'm talking about when

_____

[34]  *See* Exhibit "E", Deposition of Neeley, p. 112.

they registered it in 2003, that act in and of itself, you're not contending that was
in bad faith, are you?

A.   I believe it was.  However, I can see another perspective where it would not
be.

Q.   And I want to know again why you think that act was in bad faith.  Just
registering it.

A.   Because they knew the domain had a history.  They could look it up.  And
they looked it up and said, Gosh, this guy's been using this domain, and there's
lots of links to it.  This would be a good domain for us to get.

Q.   So I -- I'm taking it that you say any time they register a domain name that
has a documented history, you think that's in bad faith?

A.   If it has a bona fide -- if it has a AdSense for Domain history, no.  But if it
has a real history, yes. [35]

When asked why offering to sell him eartheye.com[36] was in bad faith, Neeley said he

believed that anytime one tries to sell a domain name to a person who once held a registration for

it, that action is inherently done in bad faith if the subsequent owner approaches the previous

owner first.  However, he was completely unable to explain this belief.  The testimony was as

follows:

Q.   Okay.  Well, let me ask you -- let's -- let me just pose a hypothetical to you,
and I'm going to try to make it mirror your situation.  Let's say I own a domain
name.

A.   Do you?

---

[35] *See* Exhibit "E", Deposition of Neeley, pp. 106-107; 112-113.

[36] Which, as the previously-detailed facts indicate, NameMedia did not do.

Q.    No, I do not.  But let's say Brooks -- brooksthelawyer.com.  And let's say I let it expire back

A.    It's already registered.

Q.    Did you register it?

MR. PAGE:  You know I got to look now.

MR. WHITE:  Okay.

MR. PAGE:  You guys go ahead.

Q.    (Mr. White continued.)  But, anyway, let's say that that's -- that I let that registration expire back in 2001.

A.    Sure.

Q.    And let's say that NameMedia registers that domain after I let it expire, and they put it up for sale, like they did Eartheye.com, and I -- I just -- five years or six years later I visit brooksthelawyer.com to see what's going on there now and find out NameMedia is offering it for sale.  And then I go to them and tell them, I --You're selling my old domain name.  And they offer to sell it to me.  Are you saying that's bad faith on their part?

A.    I would not say so in that case.  However, it has some very significant differences in the hypothetical question.    Suppose you had your brookslawyer.com, and eight years later, ten years, whatever years later, someone contacts you saying, Hey, I have a domain name for sale.  Not that you went and saw it, but that someone contacted you and say, Hey, I have a domain name for sale on a special summer sale now, and if you'll bid more than $2300, it could be yours.

Q.    Now, why would that be bad faith?  I'm not -- I'm not following that at all.  I let it expire way back then, and I think any reasonable person would be perfectly valid in assuming that I let it expire because I didn't want it anymore.  So why would it be bad faith for them to try and sell it to me?

A.    It would be bad faith because they're trying to sell it to you as a previous owner.  If you, John Q. Public or anybody else, it would not be bad faith, but bad

faith would be to the previous owner.  Say, Hey, this domain  name that you had, we're selling it.

Q.   Well, that goes back to my bicycle example.

A.   All right.

Q.    If -- if -- if I -- if I sold my bike to you back in 2000, I've sold it to you because I didn't want it anymore.

A.   Well, since I -- I –

Q.   And are you saying that I should be offended if you try to sell that bike back to me eight years later?  I don't understand why that would be offensive or in bad faith.

A.    Well, but I never sold them the domain name.  The domain name became available as I did not register.

Q.   Okay.  Well, let's say I threw my bike in the trash back in 2000.

A.   Okay.

Q.   I -- I threw the bike in the Dumpster back in 2000.  And some guy fishes it out of the Dumpster and then eight years later tries to tell sell me that bike.  You're saying that's bad faith on that guy's part to try to sell the bike I threw away, to me?

A.   If he knew it was you?  Yes.

Q.   Why?

A.   Because if I said, Hey, look, I got your old bike. Want to buy it back?

MR. PAGE:  He threw it away.

Q.   (Mr. White continued.)  I threw it away.  Why would that be bad faith?

A.   I don't suppose I see.

Q.   You don't see?

**NAMEMEDIA INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT –Page - 16 -**

A.   I don't see.

Q.   How that would be bad faith, or you can't explain it?

A.    I can't explain it.  Apparently, we have a fundamental differences.  I believe it's obviously bad faith, and I don't believe they should have – be required.  I think you should be able to see that if you own something, and then through whatever you went – you threw it away, gave it away, forgot you had it, and someone came in and said, Hey, you want to buy this?[37]

With this testimony, Neeley admits that NameMedia's invitation to negotiate a mutually acceptable price for the eartheye.com domain was not a bad faith "offer" when he said that in the first hypothetical posed to him -where the "offer" was not made until after the previous owner approached the subsequent owner – the "offer" would not be in bad faith.  That precisely matches the undisputed facts in this case: there is no evidence whatsoever that NameMedia ever made an unsolicited "offer" to sell the eartheye.com domain to Neeley prior to Neeley first initiating contact with NameMedia about the eartheye.com domain on November 29, 2007.  The only three occasions on which NameMedia broached the subject of negotiating with Neeley with respect to the potential sale of the eartheye.com domain were in response to Neeley's own inquiries: a) in Ted Olson's November 29, 2007 email in reply to his phone conversation with Neeley; b) in the January 26, 2009 mass-mailed advertisement email; and c) in Erik Zilinek's February 13, 2009 letter.

As to Neeley's past use of "Eartheye", he testified that in the past he used the name in conjunction with a photography studio.  The facts regarding that use are detailed below in Facts

---

[37]  *See* Exhibit "E", Deposition of Neeley, pp. 196-199.

subpart C.  As to his past use of "Sleep spot," Neeley testified that he once used the name in conjunction with an online hotel reservation software system.  However, he testified that the only customer he remembered ever receiving income from with regard to the system was the Orlando Howard Johnson's hotel.[38]

**B.      Undisputed Facts Establishing Descriptive Nature of "Sleep spot."**

Neeley has alleged that at one time, he used the name "Sleep spot" to advertise an online internet hotel reservation system at the sleepspot.com domain.  Neeley was asked about why he called the service "Sleep spot":

> Q.    Okay.  So you were wanting to, with that name, tell people exactly what the service was; correct?
>
> A.    Yes.  And I intended to sell to hotels and bed and breakfasts directly.  In other words, they could sell their inventory through SleepSpot.  However –
>
> Q.    And I just –
>
> A.    -- they could also sell it on their own website.  Like Howard Johnson's could use Howard Johnson's website, but in the background it would be using SleepSpot.
>
> Q.    Okay.  So when people saw that website, that name SleepSpot, you wanted that -- you wanted that to perfectly describe what the service was?
>
> A.    You're coming to look for a spot to sleep, yes.[39]

**C.      Undisputed Facts Establishing Neeley's Abandonment as to "Eartheye."**

---

[38]  *Id.*, pp. 128-29.

[39] *Id.*, pp. 71-72.

For some relatively short period of time during the late 1990's and early 2000's, Neeley owned and operated a fledgling photography studio in Fayetteville.  Neeley testified that he could not remember the exact years it was in operation, but that he engaged in photography as a full-time occupation "probably from '98 to 2002."[40] Neeley said that at the time of the auto accident he suffered on September 3, 2002, he was working for J.B. Hunt because he could not earn enough money in photography.[41]

At least for a portion of the studio's existence, Neeley called it "Eartheye."   Through 2006, there was a listing for "Eartheye" in the Fayetteville phone book yellow pages under "Photographers-Commercial."[42]  However, Neeley denied that he maintained the studio in the years after his accident in September 2002, and explained the continuing phone listing by stating that perhaps his legal guardian kept paying for the ad.[43]  The listing for Eartheye had disappeared as of the 2008 edition of the phone book.[44]

Neeley testified that since his auto accident on September 2, 2002, he has engaged in no gainful employment.[45] He said that his photography work since the accident has been limited to

---

[40] *See* Exhibit "E", Deposition of Neeley, pp. 14-15.

[41] *Id*. p. 15.

[42] *See* Exhibit "S", December 2006 phone book listing.  Counsel for NameMedia has been unable to obtain a copy of the 2007 Fayetteville phone book so it is not known at this time whether there is a listing for "Eartheye" in that edition.

[43] *See* Exhibit "E", Deposition of Neeley, pp. 33-35.

[44] *See* Exhibit "T", December 2008 yellow pages for "Photographers-Commercial."

[45] *See* Exhibit "E", Deposition of Neeley., p. 37.

photography for his son's T-ball team, two weddings, and a job for a "pet manufacturing" company.[46]   He also remembered doing some work for a jewelry maker and photography of quilts and baskets for "Ozark Folkways."[47]   Neeley also testified that since his accident, he has marketed and sold artistic photographs through cafepress.com, a website which allows users to create and manage their own "storefront" and sell items such as mugs, t-shirts, stationery, etc.[48] Neeley's storefront can be accessed by searching on his name.[49]   However, a search on the cafepress website for the name "eartheye" produces no results, and a search on the name "earth eye" produces no products related to Neeley. [50]   Instead, it appears that Neeley's offerings on cafepress are marketed under Neeley's name.   Neeley also maintains a website located at curtisneeeley.com.  That site contains links advertising Neeley's photographs.  However, the site advertises no photography studio, and does not appear to depict the name "Eartheye," any variation thereof, or any related logo in conjunction with the offering of any products or services.[51]  Indeed, on the home page, the only appearance of the word "eartheye" on the

---

[46]  *Id.*, pp. 37-38

[47]  *Id.*, pp. 38-39.

[48]  *See* Exhibit "U", cafepress.com homepage.

[49]  *See* Exhibit "V", Curtis Neeley storefront at cafepress.com

[50]  *See* Exhibit "W", cafepress search results for "eartheye" and "earth eye."

[51]  *See* Exhibit "X" curtisneeley.com website homepage printout dated April 27, 2011.

homepage is in a section at the bottom devoted to what Neeley terms Namemedia's "cybersquatting" of the domain.[52]

In his deposition, Neeley was asked about his future plans, if any, for use of the name "Eartheye."  The relevant questioning was as follows:

Q.   Okay.  Why do you believe Eartheye.com is valuable to you today?

A.   I'm not altogether sure why, other than it is part of  my -- my ancient history.

Q.   Part of your history?  Okay.

A.   And I would like to just have it go away.

---

Q.   So you're not -- you're not wanting this domain name back?

A.   I would like to have it maybe as a reference to CurtisNeeley.com now as a forwarding domain, but I do not intend to use it to further my art.

Q.   So you don't intend -- you have no intent to use the name Earth Eye at all going forward in connection with any commercial photography or any other kind of photography?

A.   I will use it in my photography, yes, but not Eartheye.com.

MR. PAGE:  I'm sorry.  I couldn't -- not –

THE WITNESS:  Not Eartheye.com.

MR. PAGE:  Oh, okay.

Q.   (Mr. White continued.)  But you -- you do want to use Earth Eye –

_____

[52]   *Id.*, p. 2 of 3.

A.   Yes.

Q.   -- just not Eartheye.com?

A.   Yes.  I do.
---

Q.   Well, do you have any intent going forward to do any kind of photography work for pay?

A.   I intend to teach photography, yes.

Q.   But you don't –

A.   But not take pictures.

Q.   You don't intend to take anymore pictures?

A.   Well, I'll take pictures, but I will use them for like art in nicely framed art with less than 200 copies.

Q.   And you're not intending to sell those?

A.   Oh, yeah.  I do.  Like I currently sell art.

Q.   Okay.

A.   I have no idea when it's going to sell, it's just out there.

Q.   Well, how many -- or what -- what name are you going to use, if any?  Just your own name to advertise those?

A.   (Witness nods head.)

Q.   Is that a yes?

A.   I forgot.  I'm sorry about that.  Yes.  It would be Curtis Neeley or the Curtis Neeley Foundation.

Q.   Okay.  And you're not going to use Earth Eye to advertise that?

A.   I will use that as a name as an alias also, but -- as a historical perspective on the art I do, but other than that, no.

Q.   Okay.  I'm not sure what you mean by that.  What do you mean by historical perspective?

A.   If you go to Eartheye.com, if you go to Eartheye.com, that's a business website now that does topographical mapping.  But if you go to my website, it says Earth Eye Images.  And that is -- makes the person look, you know, Huh, what's that?  And they can look back at the historical record of it and find out.

Q.   Well, is that the only reason why you're going to use Earth Eye is so people can look back and see what you've done in the past?

A.   Yes.  Other than possibly a slight continuation with the Keeping My Eye on the Earth.

Q.   What do you mean a slight continuation of that?  Be more specific, if you could.

A.   Okay.  To use the term "Keeping My Eye on the Earth," as in that I will take pictures that most people will just ignore.

Q.   Okay.  It sounds like what you're telling me is that you don't intend -- and please correct me if I'm wrong.  I know you will.  I'm not trying to put words in your mouth, but it sounds like you don't intend to use Earth Eye to actually advertise any kind of photography services going forward.  Is that correct?

A.   That is correct.[53]


### III.   Summary Judgment Standard

The standards governing the Court's consideration of a motion for summary judgment are well-established.  Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is

---

[53] *See* Exhibit "E", Deposition of Neeley, pp. 92-93; 98-100.

appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(c)).   To resist such a motion, the non-moving party must come forward with sufficient evidence to establish that a material factual issue exists to be determined at trial.   See *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 884, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). At this stage of the litigation, the Court's function is not to divine the "true facts" of the case, but only to determine whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."   *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at 249, 106 S.Ct. at 2511.

## IV.    Argument

**A.    Neeley has no evidence that NameMedia acted with any bad faith intent to profit from any trademark owned by Neeley.**

In order to recover under the ACPA, Neeley must prove that in registering, trafficking in, or using the domain names eartheye.com and sleepspot.com, NameMedia acted "with a bad faith intent to profit from" a trademark owned by Neeley as to which the domain names are identical or confusingly similar.  15 U.S.C. §1125(d)(1)(A)(i).  *See Coca-Cola Co. v. Purdy*, 382 F.3d 774, 783 (8th Cir. 2004) ("The question under the ACPA is not whether the domain names which Purdy registered are likely to be confused with a plaintiff's domain name, but whether they are identical or confusingly similar to a plaintiff's mark.").  Although the Act enumerates nine factors a court *may*, but is not *required*, to consider in determining whether the defendant acted with a bad faith intent to profit, those factors are not appropriate in all cases.  Multiple courts have granted or upheld the grant of summary judgment to the defendant on the bad faith intent to profit element irrespective of an analysis of the nine factors, finding them to be inappropriate in the particular case.  *See, e.g., Southern Grouts & Mortars, Inc. v. 3M Co*., 575 F.3d 1235, 1244 (11th Cir. 2009) ("As other courts have observed, the statute clearly makes consideration of those factors permissive ('may consider' being the key language).").  The United States Court of Appeals for the Sixth Circuit observed:

> The role of the reviewing court is not simply to add factors and place them in particular categories, without making some sense of what motivates the conduct at issue.  The factors are given to courts as a guide, not as a substitute for careful

thinking about whether the conduct at issue is motivated by a bad faith intent to profit.

*Lucas Nursery and Landscaping, Inc. v. Grosse*, 359 F.3d 806, 811 (6th Cir. 2004).  *See also Career Agents Network, Inc. v. White*, 2010 U.S. Dist LEXIS 17263 (E.D. Mich. 2010) ("The factors are, instead, expressly described as indicia that 'may' be considered along with other facts."); *Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362, 368 (D.N.J. 2004) ("These factors are not considered exclusive or mandatory.").

   In the present case, where the undisputed facts simply do not allow for a reasonable finding of a bad faith intent to profit from a trademark owned by Neeley, it is neither necessary nor appropriate to consider the nine factors or to make them a bar to granting summary judgment in NameMedia's favor. Neeley claims that NameMedia's registration of the two domains constitutes a bad faith intent to profit from his trademarks.  However, as set forth above, NameMedia did not even know Neeley or any trademarks of his existed at the time it registered each of the two domains, and Neeley has no evidence to the contrary.  The only other conduct which Neeley claims to evidence a bad faith intent to profit was NameMedia's invitation to negotiate the sale of the eartheye.com domain to him as an "offer" he could accept. However, as noted above, Neeley admits that he did not believe such conduct was in bad faith when he apparently failed to realize that he initiated any and all contact with NameMedia; it was never *vice versa*.  Aside from this admission, even if NameMedia had "offered" eartheye.com for sale to Neeley – either before or after Neeley approached NameMedia - that fact standing alone is

hardly sufficient to permit the reasonable inference that NameMedia did so in order to profit from a trademark of Neeley's.

Understandably, the nine factors do not fit the facts of this case because the facts of this case do not fit the intent of the ACPA.  The Act was inspired by the conduct of cyber-pirates in the early days of the commercial internet, who would register domain names identical or similar to well-known trademarks, such as McDonald's and Coca Cola[54], in an attempt to force the mark holders to pay large sums of money to acquire the domain names.  The Senate Judiciary Committee's report on the ACPA makes it abundantly clear that the purpose of the Act was to protect against the exploitation of *well-known* trademarks.  Indeed, "well-known" is an adjective the report uses seven times to describe the type of mark the ACPA is intended to protect.  Thus the nine factors were not intended to stand in the way of summary judgment where - as here – there is a complete lack of any evidence to profit from a trademark.

In short, aside from the observation that Mr. Neeley's claim is a perversion of the intent of the ACPA, there simply is no evidence that NameMedia took any action with regard to either domain with any intent to profit from any trademark of Neeley's.  As such, NameMedia should be granted complete summary judgment on all of Neeley's ACPA claims.

**B.     "Sleep spot" is a merely descriptive mark without secondary meaning.**

---

[54]   *See* Report of the Senate Judiciary Committee on the ACPA, No. 106-140, August 5, 1999, p. 6 (attached hereto as Exhibit "Y").

As a threshold requirement for recovery under the Act, the mark which plaintiff claims is the same as or confusingly similar to the domain name in question must be a distinctive mark. 15 U.S.C. §1125(d)(1)(A)(2)(i).  In determining whether a mark is distinctive, it is classified as (1) arbitrary or fanciful, (2) suggestive, (3) descriptive, or (4) generic.  *See Insty Bit, Inc. v. Poly-Tech Indus*., 95 F.3d 663, 672-73 (8th Cir. 1996).  "A descriptive mark… immediately conveys the nature or function of the product and is entitled to protection only if it has become distinctive by acquiring a secondary meaning." *Duluth News-Tribune v. Mesabi Publishing Co*., 84 F.3d 1093, 1096 (8th Cir. 1996).

As set forth above, Neeley admits in his deposition testimony that the name "Sleep spot" was intended to describe the service being marketed under the name.  Even aside from Neeley's admission, it is obvious that the name "Sleep spot" for a hotel reservation system is descriptive of the service.  Therefore, Neeley cannot sustain an ACPA claim as to sleepspot.com unless he has evidence that the mark as used by him has acquired a secondary meaning with the consuming public.  No such evidence exists.  Therefore, NameMedia is for this independent reason entitled to complete summary judgment on Neeley's ACPA claim as to sleepspot.com.

## C.  Neeley has abandoned any trademark rights he ever had in "Eartheye."

In order to have a claim for cybersquatting under the ACPA, Neeley must also prove that he is the "owner of a mark" as to which the domain in question is identical or confusingly similar.  15 U.S.C. 1125(d)(1)(A), (d)(1)(A)(ii)(I).  Thus, in order to recover against NameMedia for eartheye.com, Neeley must establish that he has current trademark rights in a mark as to which eartheye.com is identical or confusingly similar.  In order for a party to have trademark

rights in a mark, he or she must use the mark in commerce.  Under the Lanham Act, "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. §1127.  A mark is deemed used in commerce as to goods when "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale."  *Id*. As to services, a mark is deemed to be used in commerce when "it is used or displayed in the sale or advertising of services and the services are rendered in commerce." *Id*.

The Lanham Act provides that trademark rights may be lost by abandonment – a mark is deemed abandoned when its use as a trademark "has been discontinued with intent not to resume such use."  *Id*.; *see also Hiland Potato Chip Co. v. Culbro Snack Foods, Inc*., 720 F.2d 981 (8th Cir. 1983).

As to the first prong of abandonment, there is no evidence that Neeley is currently using the name "Eartheye" or any similar name or logo in commerce as defined by the Lanham Act.  It appears that the only significant commercial activity for which he ever consistently used the name was a photography studio which has long since closed its doors.  In short, there is no evidence that Neeley is currently using "Eartheye" for any commercial purpose.

As to the second prong of abandonment, Neeley admits a lack of intent to resume use for a commercial purpose within the meaning of the Lanham Act.  He testified that he has no plans to ever again use the name to advertise any kind of photography services.  Although Neeley expressed a vague intent to use Eartheye in the future, his expressed intent falls far short of the

requirement of use in commerce for either goods or services within the meaning of the Lanham Act.  Neeley stated that he intended to use the name "Eartheye" only as "an alias…, but – as a historical perspective on the art I do…."  Neeley explained that he meant people could see the name "Earth Eye Images" and could "look back at the historical record and find out."  A use of a name so that people can see what Neeley has done in the past is not a use in commerce for the advertising or identification of goods or services to be sold now or in the future.  In order to avoid abandonment, his nonuse of the mark must be accompanied by an intent to use it in the future for the marketing of goods or services.  As stated by the Eleventh Circuit:

> The proper inquiry is whether Kraft intended to resume meaningful commercial use of the mark, not whether it intended to abandon the mark. Trademark rights flow from use, not from intent to protect rights. Were the rule otherwise, a party could hold trademarks that it never intended to use but did not want to allow others to use. The Lanham Act does not permit such warehousing of trademarks.

*Ambrit, Inc. v. Kraft, Inc*., 812 F.2d 1531, 1550 (11th Cir. 1986).

Neeley is free to use "Eartheye" all he wants as a "historical perspective" on the art he does, or as a "slight continuation with keeping his eyes on the Earth," but neither of these amounts to a use in commerce to identify goods or services for sale. Neeley testified that for the art he intends to sell in the future, he will sell it either under his own name or under the name of "The Curtis Neeley Foundation."  For these reasons, as a matter of law Neeley has abandoned any trademark rights he ever had in the name "Eartheye," and for this independent reason NameMedia is entitled to summary judgment on Neeley's ACPA claim as to eartheye.com.

**D.  Neeley admits he has no actual damages related to his ACPA claims.**

When asked about harm he has incurred as a result of any action taken by NameMedia with regard to the domains, Neeley admits that he had no financial or monetary damages, "other than moral rights…and rights from ill-gotten gains…."[55] In his deposition, Neeley expressed his intent to pursue statutory damages on his ACPA claims.[56]

The Court has the power under the ACPA to constrain an award of statutory damages to an amount it considers just.   15 U.S.C. §1117(d).   Given that Neeley has admits no actual damages as to either of the domain names, any award of statutory damages would be nothing but a windfall to Neeley.   Therefore in any even the Court should limit Neeley's damages to $1,000 per ACPA claim.

### V.      Conclusion

Neeley simply does not have evidence sufficient to create a question of fact as to whether NameMedia acted with a bad faith intent to profit from any trademark of his.   NameMedia didn't know he existed at the time it registered the domains, and never approached him about the domains before he approached NameMedia – four or five years after he let the domains expire. He has no evidence that NameMedia ever took any action with regard to either domain name with the intent to exploit any trademark of his.   In his deposition he limited the bad faith acts of NameMedia with regard to the domains as registering them and offering eartheye.com to him for sale.   He testified that if NameMedia had not offered a domain to him for sale prior to his

---

[55] *See* Exhibit "E", Deposition of Neeley, pp. 191-192.

[56] *Id.*

approaching NameMedia, such an offer would not be in bad faith.  Since the undisputed facts establish this to be the case, he effectively admits that NameMedia did not act in bad faith in "offering" the domain to him.  For these reasons, NameMedia should be granted complete summary judgment as to all of Neeley's ACPA claims.

Further, as to sleepspot.com, Mr. Neeley has no evidence that he has a distinctive mark, which is a prerequisite to recovery under the ACPA.  He candidly admits that the name "Sleep spot" is descriptive of the product, and he has no evidence of any secondary meaning.  Therefore, NameMedia should for this additional reason be granted summary judgment on Neeley's ACPA claim as to sleepspot.com.

Additionally, the undisputed evidence, including Neeley's deposition admissions, establish as a matter of law that Neeley has abandoned any trademark rights he may have once had in the name "Eartheye."  Therefore, he has no current trademark rights in any mark which is identical to or confusingly similar to the domain eartheye.com.  For this additional reason NameMedia should be granted summary judgment on Neeley's ACPA claim as to eartheye.com.

Finally, should the Court not grant complete summary judgment as to liability, statutory damages on Neeley's ACPA claims should be limited to $1,000 per claim.

Respectfully submitted,

H. WILLIAM ALLEN (ABN 69001)
BROOKS C. WHITE (ABN 2000093)
ALLEN LAW FIRM, P.C.
212 Center Street, 9th Floor
Little Rock, AR 72201
(501) 374-7100
hwallen@allenlawfirmpc.com

**NAMEMEDIA INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** –Page - 32 -

bcwhite@allenlawfirmpc.com


By: /s/  Brooks C. White
        Brooks C. White

Attorneys for Defendant and
Counterclaimant NameMedia, Inc.

 CERTIFICATE OF SERVICE

I, Brooks C. White, hereby certify that on this 27th day of April, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following attorneys of record:

Michael H. Page
Durie Tangri, LLP
217 Leidesdorff Street
San Francisco, CA 94111
mpage@durietangri.com

Jennifer H. Doan
jdoan@haltomdoan.com
Joshua R. Thane
jthane@haltomdoan.com
Haltom & Doan
Crown Executive Center, Suite 100
6500 Summerhill Road
Texarkana, TX 75503

I further certify that, on this 27th day of April, 2011, I mailed a copy of the foregoing to the following *pro se* plaintiff:

Mr. Curtis J. Neeley, Jr.
2619 N. Quality Lane, Apt. 123
Fayetteville, AR 72703

/s/ Brooks C. White
Brooks C. White